**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James TAYLOR, Defendant-Appellant.**

**No. 12469.**

United States Court of Appeals
Seventh Circuit.

May 4, 1959.

Erwin W. Roemer, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John F. Grady, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Defendant-Appellant, James Taylor, was indicted, tried to a jury, and found guilty of an offense under Title 21 U.S. C. § 176a, as amended by the Narcotic Control Act of 1956, in knowingly, with intent to defraud the United States, receiving, concealing, and facilitating the transportation and concealment after unlawful importation of approximately 30 pounds of marihuana, knowing the same to have been imported into the United States contrary to law.

Defendant's appeal relies on errors allegedly made in instructions to the jury, rulings on evidence, and failure to grant a motion for verdict of acquittal.

The evidence at the trial indicated the following. On May 14, 1958, Tom Wagner, the Supervising United States Customs Agent at Brownsville, Texas, learned from one of his subordinates, Agent Dompier, that two Mexican informants, one named Santos Larma and the other known only as Jose or Joe, had been hired to haul marihuana from Brownsville, Texas, for delivery to one Jose Lopez and an unidentified Negro man at the Manor Motel near Joliet, Illinois, and that the informants, when ready to haul the marihuana from Texas to Illinois, would notify the Customs Bureau.

Agent Wagner saw the informants on May 18, 1958, at Brownsville, Texas. He did not learn when or from whom they had obtained the two sacks containing marihuana which the informants had with them. A Texas police officer rode with the two informants when they drove off from Brownsville, headed for Illinois, in their own automobile, with the contraband. Agents in government automobiles preceded and followed the informants throughout the trip.

Wagner testified that he planned to apprehend the person who ordered the marihuana. For that purpose a constant surveillance was maintained.

On May 20, 1958, the agents saw the informants carry the two sacks of marihuana into Cabin 40 at the Manor Motel. On May 22, 1958, at 7:30 P.M. defendant, James Taylor, and Jose Lopez drove up in defendant's automobile and parked it in front of Cabin 40. Defendant and Lopez went into Cabin 40. In about ten minutes they and the two informants came out. Defendant opened the trunk of his automobile. Lopez and one of the informants each placed one sack inside. Defendant closed the trunk, gave the keys to Lopez, and both left the Motel in defendant's automobile with Lopez driving. The agents carrying on the surveillance followed the car, and, within about half a mile of the Manor Motel, arrested the defendant and Lopez. The only two sacks in the trunk were found to contain the marihuana.

Customs Agent Bruner, one of the agents who was present during the incident at the Manor Motel, testified that when he later interviewed defendant in the police station at 11th and State Streets, in Chicago, Illinois, he asked defendant for whom he had gone to get the marihuana and defendant said, for "Mr. Owens", and he further stated that he would not testify against Owens.

█ Defendant offered no evidence at the trial.

Defendant argues that the Trial Court's instruction that " * * * it is not necessary for the Government to adduce evidence that the marihuana was unlawfully imported. * * * " was incorrect, and, being based on an arbitrary connection between facts proved and facts assumed, thus unconstitutionally deprived defendant of due process of law.

Defendant argues that the Trial Judge, and other Judges on whose rulings he relied, have all misinterpreted Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 with respect to presumption of unlawful importation in Title 21 U.S.C.A. § 174 (which except for the fact that it refers to "narcotic drug" instead of "marihuana", is identi-

cal to section 176a of the statute here involved).

We need not discuss this argument, as, without any reference to the Yee Hem case, this Court has ruled, with respect to section 174, that by force of the statute, proof of possession of the narcotic drug shall be sufficient evidence to authorize a conviction unless defendant explains his possession to the satisfaction of the jury. United States v. Feinberg, 7 Cir., 1941, 123 F.2d 425, 427, certiorari denied 315 U.S. 801, 62 S.Ct. 626, 86 L. Ed. 1201; United States v. White, 7 Cir., 1956, 228 F.2d 832, 834. Defendant's contention that marihuana can be grown domestically does not render invalid the presumption of unlawful importation created by section 176a. United States v. Soto, 7 Cir., 1958, 256 F.2d 729.

■ Defendant sought to have the jury instructed that if it believed that the government had direct evidence available concerning the manner of importation, then the jury was entitled to infer, from failure to present such evidence, that the evidence would have been unfavorable to the government. This instruction would have invited mere speculation as the testimony is silent as to whether the government did or did not have such evidence available. Such an instruction might well defeat Congressional intent in providing by statute that unexplained possession shall be sufficient evidence to authorize conviction.

Defendant contends that the use of the word "articles" in one instruction might have misled the jury into the belief that defendant could be found guilty on mere proof of possession of the sacks without knowledge of their contents. However, the Trial Judge in his charge instructed the jury: " * * * I say 'articles', in this case we are dealing with marihuana. * * * "

In connection with the question of proof of possession, one of the cases cited by defendant is that of United States v. Landry, 7 Cir., 1958, 257 F.2d 425. However, that case is distinguish-

ed on facts. There, drugs owned by Landry were found in the pocket of another who stated that she was keeping it for him because if she let him have it he would use it all at once. Here the evidence placed the marihuana in Cabin 40. Defendant was in the cabin with the two informants, Lopez, and the marihuana for about ten minutes. He opened the trunk of his own automobile and allowed the marihuana to be placed inside. He closed the trunk and rode off in his own automobile, with Lopez (to whom he had given the keys) driving. Later he admitted he had gone to get the marihuana for a Mr. Owens.

Defendant argues that this last point was the subject of conflict in the evidence. Agent Bruner testified that he asked defendant: "Who did you go out to get the marihuana for?" to which defendant replied, "Mr. Owens." Agent Wagner testified that "Taylor stated that he had been sent out to the Manor Motel for this load of stuff, that it didn't belong to him, and he had been sent after it." Agent Wagner said further that he asked if Taylor would testify against the man for whom he claimed he was working; that Taylor had said: " * * * his name was Robert Owens, and he stated that he would not do so, he couldn't afford to."

■ Agent Bruner admitted on cross-examination that his written report on this case had not included the statement allegedly made by Taylor, (which was elicited in Agent Bruner's testimony on direct examination) and that such statements, if made by the defendant ought to have been noted in the written report Agent Bruner had made at that time. These were matters affecting the credibility of the witness and were properly for the jury.

In deciding whether the evidence was sufficient to support the verdict, we must view the evidence in the light most favorable to the government, and must also resolve any conflicts in the evidence in favor of the government. United States v. Yeoman-Henderson, Inc., 7 Cir., 1952, 193 F.2d 867, 869; United States v.

Thayer, 7 Cir., 1954, 209 F.2d 534, 538. It is not for us to determine the credibility of the witnesses who were heard and viewed by the Trial Judge and jury. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. There was ample evidence from which the jury might have found that defendant had possession.

■ Defendant requested an instruction that if the jury found his control of the marihuana to be "fleeting and shadowy in its nature," then his possession was insufficient to warrant an inference that he knew the marihuana to be imported contrary to law. Neither the Landry case nor United States v. Wainer, 7 Cir., 1948, 170 F.2d 603, 605, 606, to which defendant refers, supports such an instruction.

The Wainer case dealt with stolen cases of beer, part of an interstate shipment. Wainer was a whiskey broker who picked up telephone calls and spent considerable time in Crosstown Liquor Mart, of which his brother was part owner, but in which Wainer had no interest. Wainer arranged for sale of beer from one Burns to Crosstown. He later saw the beer openly delivered and unloaded as was customarily done in Crosstown's storeroom. There was no evidence that Wainer ever handled invoices or made payment for Crosstown. When later approached by a police officer, on the premises of Crosstown, Wainer is said to have identified himself as the "boss," and without hesitation told the police officer all the details of the beer purchase. Wainer testified that he first learned that the beer had been stolen in his conversation with this police officer. Mr. Justice Minton, then Circuit Judge, speaking for this Court, found " * * * not a scintilla of evidence that the appellant had anything to do with the receiving, storing, possessing, handling, or disposing of any of the beer." It was in this context that he made the comment regarding "possession," as meaning more than "passing control, fleeting and shadowy in its nature," to which reference is made in Landry.

■ Defendant also requested instructions (1) that law enforcement officers may not supply "the subject matter of a crime," and that defendant should be acquitted if he could not have committed the crime but for the activities of the law enforcement officers; or (2) that if the jury found the marihuana had come into the possession of the federal or Texas state governments, or was caused by them to be imported into the United States, it lost its contraband character. There was no evidence adduced at the trial to support instructions of this character. The evidence showed that the two informants hauled the marihuana from Brownsville to the motel where defendant and Lopez came to receive it. The fact that government agents followed it and waited to see who would appear to receive it, does not support the instructions requested by defendant.

Defendant moved to suppress the marihuana as evidence on the ground that it was secured in an unlawful search and seizure. The motion was made when the case was called for trial. Defense counsel asked the Court to reserve ruling until the testimony of the Customs Agents had been given at the trial. The Trial Judge denied the motion, stating, "I deny your motion to suppress because you have nothing in support of it." Counsel was expressly granted leave to renew the motion during trial. Defendant argues that restriction of cross-examination into matters which would have supported his motion prevented his renewing the motion later. Study of the record, however, indicates probable cause to believe that defendant was committing a crime at the time he was apprehended and his automobile searched.

We find no prejudicial error in the proceedings below.

The Court is appreciative of the commendable service in written briefs and oral argument rendered faithfully, without compensation, by Erwin W. Roemer, of the Chicago bar, appointed to represent defendant-appellant in this Court.

Affirmed.