UNITED STATES of America, Appellee,

v.

Floyd RUSSO, Appellant.

No. 54, Docket 26146.

United States Court of Appeals
Second Circuit.

Submitted Oct. 6, 1960.

Decided Nov. 15, 1960.

David M. Markowitz, New York City, for appellant.

W. Paul Flynn, Asst. U. S. Atty., District of Connecticut, New Haven, Conn. (Harry W. Hultgren, Jr., U. S. Atty., District of Connecticut, Hartford, Conn., on the brief), for appellee.

Before HINCKS, WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

In a two count indictment defendant Russo was charged with (I) knowingly transporting in interstate commerce from Paterson, New Jersey, to Greenwich, Connecticut, for the purpose of sale or distribution, obscene, lewd, lascivious and filthy film in violation of 18 U.S.C.A. § 1465; and (II) with conspiring with Robert Radowiecki, Salvatore Pannella and Joseph Aiello (named as co-conspirators but not as defendants) to so transport in violation of 18 U.S.C.A. § 371. On appeal from a judgment of conviction by a jury on both counts,[1] Russo argues 1) that there was insufficient proof of knowledge by him that the films were to be transported in interstate commerce; 2) that there was error in that the indictment charged a conspiracy to transport from New Jersey to Greenwich whereas the proof indicated New Haven as the destination; 3) that the trial judge erred both in refusing to strike out and in admitting certain testimony; and 4) that the Government's summation was inflammatory and improper.

*The Proof*

The principal witnesses were Pannella and Radowiecki for the Government and Aiello for Russo. All three had previously pleaded guilty to the offense of interstate transportation of obscene film. Their testimony revealed that on June 5, 1959 they met at the Grove Grill in West Haven, Connecticut to arrange for the purchase of obscene film. The next day these three drove in Pannella's car from West Haven to Paterson, New Jersey. In Paterson they entered a novelty shop where they met Russo who immediately inquired about the blue Ford with New York license plates, which had parked behind Pannella's car, and which Russo thought might belong to the FBI. After

1. As to the first count the Government relied upon proof of aiding and abetting. The trial court charged that Russo could be convicted on such proof. One indicted as a principal may be convicted on evidence showing that he merely aided and abetted. 18 U.S.C.A. § 2: Jin Fuey

Moy v. United States, 1920, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; Swanne Soon Young Pang v. United States, 9 Cir., 1953, 209 F.2d 245; United States v. Knickerbocker Fur Coat Co., 2 Cir., 1933, 66 F.2d 388; Melling v. United States, 7 Cir., 1928, 25 F.2d 92.

going out to the sidewalk to look at the car, Russo, Radowiecki, Pannella, and Aiello discussed the purchase terms of the film, and it was agreed that 320 reels would be bought at $4 a reel. Because Russo claimed that he did not have the film with him and because of the presence of the suspicious car, Russo told the others to drive away and meet him in half an hour on the corner. When Pannella, Radowiecki and Aiello returned to the novelty shop area, Russo motioned for them to follow his car and after driving "in circles" for approximately half an hour, both cars stopped on a gravel road overlooking a highway. At this point two boxes of film were transferred from the trunk of Russo's car to the trunk of Pannella's car, and $1,280 was paid to Russo. Russo then directed the others to the road to New York—in fact he drove his car to the entrance to the highway as a guide. Pannella, Aiello and Radowiecki then drove back to Connecticut. After passing through the Greenwich, Connecticut toll station, they were arrested by the FBI, who had been observing their activities at various times throughout the day.

 Because Russo's counsel admitted that the films were obscene and that Russo so knew them to be, the only seriously disputed issue of fact was Russo's knowledge, or absence thereof, that the films were to be transported in interstate commerce.[2] On this issue there was

evidence that Russo assisted in loading the film into the trunk of Pannella's car which was bearing Connecticut license plates; that, after having been paid for the film, Russo directed the other three to the highway leading to New York; that a telephone call was made on the afternoon of June 5, 1959 from Russo's phone in Paterson to the Grove Grill in West Haven; and that Pannella and Radowiecki were introduced to Russo by Aiello as "Bob and Sal from New Haven." Aiello and Radowiecki denied that such an introduction mentioning New Haven was ever made but the problem of resolving veracity was for the jury. On the record as a whole, there was sufficient evidence to support the finding implicit in the jury's verdict that Russo had knowledge that the films were to be transported in interstate commerce. Russo not only knew of the intended illegal use of the films, but also furthered, promoted and cooperated in it by supplying merchandise banned from interstate commerce which he delivered in a furtive and clandestine manner in order to avoid detection. He thus aided and abetted such transportation and conspired to so transport.[3]

*The Indictment*

 Russo argues that there is a fatal defect in the indictment since it charges him with transporting and conspiring to transport from Paterson, New Jersey to Greenwich, Connecticut, where-

2. The single transportation in interstate commerce of two or more obscene films creates a rebuttable presumption that such film was intended for sale or distribution. 18 U.S.C.A. § 1465.

3. There is nothing in this court's decision in United States v. Falcone, 2 Cir., 109 F.2d 579, affirmed 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, that would preclude affirmance of Russo's conviction. In that case it was held that a seller of sugar did not become a conspirator with, or an abetter of, the buyer merely because the seller knew that the buyer intended to use the sugar in the operation of an illegal still. As was said in United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, 930, 931, "we have limited that case [Falcone] to its strict facts—

the case of a supplier of goods, innocent in themselves, who does nothing but sell those goods to a purchaser who, to the supplier's knowledge, intends to and does use them in the furtherance of an illegal conspiracy." The instant case shows a much more direct participation in the illegal enterprise than appeared in Falcone. See Direct Sales Co. v. United States, 1943, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674; United States v. Piampiano, 2 Cir., 1959, 271 F.2d 273; United States v. Tramaglino, supra; United States v. Loew, 2 Cir., 1944, 145 F.2d 332, certiorari denied 1945, 324 U.S. 840, 65 S.Ct. 587, 89 L.Ed. 1403; Note, Falcone Revisited: The Criminality of Sales to an Illegal Enterprise, 53 Colum. L.Rev. 228 (1953).

as the evidence only refers to transporting from Paterson to New Haven. This variance, if it be one, clearly does not affect substantial rights and therefore may be disregarded. See Federal Rule of Criminal Procedure 52(a), 18 U.S.C.A.; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

### Striking Out and Admission of Testimony

Russo urges as error the failure to strike out evidence of conversations among the other co-conspirators which was received subject to connection and which, he claims, was never connected. As noted earlier, the existence of Russo's knowledge of interstate transportation was the only element of the conspiracy that was seriously contested; and on this element, in addition to the unobjected to testimony that two conspirators were introduced to Russo as being from New Haven, there was independent proof that a telephone call was made from Russo's phone in Paterson to West Haven, Connecticut, and that Pannella's car was carrying Connecticut license plates which Russo had the opportunity to see. Since there was thus sufficient independent evidence of all elements of the conspiracy, the trial judge was not in error in refusing to strike the hearsay declarations of Russo's co-conspirators.

Nor was the failure to exclude the testimony of an employee of the New Jersey Bell Telephone Company error. This witness testified that the Company's records disclosed that on June 5, 1959, at 1:42 P. M., a telephone call was made from Russo's phone to the Grove Grill in West Haven. Although the probative value of this evidence may be slight, it was, nevertheless, relevant on the issue of Russo's knowledge of interstate transportation.

4. Since there was no evidence as to the conversation which might have occurred during the telephone call, a hypothetical conversation should not have been created by the prosecutor during summation. However, in the light of the definite proof presented on the determinative issue of knowledge of intended interstate

### The Government's Summation

Russo's contention that the Government's summation was so inflammatory and improper as to require reversal is without merit. A reading of the entire summation together with the trial judge's comments and charge reveals that defendant was not prejudiced by the prosecutor's remarks.[4]

The judgment is affirmed.

transportation, this hyperbole of forensic advocacy did not deprive Russo of a fair trial. Any effect of this comment would have been eliminated by the clarity of the court's charge which presented in most understandable form the issues with which they were to concern themselves.