Michael John KLEPPER, Appellant,.

v.

UNITED STATES of America, Appellee.

No. 18993.

United States Court of Appeals Ninth Circuit.

April 30, 1964.

Golden, McDevitt & Martin and William O. Ward III, San Diego, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Russell R. Hermann, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, MERRILL and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from appellant's conviction by a jury of two counts in a three count indictment. On April 14, 1963, appellant was stopped entering the United States at the Mexican border. A border search of the automobile he was in, driven by his friend Baumgardner, and owned by Baumgardner's mother, revealed four one-pound packages of marijuana concealed under the hood against the fire wall. A previous search of appellant had revealed he was carrying a loaded pistol in his right front pants pocket. The points of the bullets had been cut in the form of a cross, to create what are commonly known as dum-dum bullets.

The first count charged appellant and his companion with illegally importing or smuggling marijuana; the second charged each with concealing the illegally imported marijuana; a third charged the appellant alone with smuggling into the United States a loaded .32 caliber pistol, and defendant Baumgardner with aiding and abetting that crime. At the conclusion of the government's case, the third count was dismissed by the trial court: the only evidence being that the defendant had taken the revolver both out of and into the United States. Appellant was sentenced to five years on each conviction, to run concurrently.

Jurisdiction below rested on 18 U.S.C. §§ 3231, 545 and 2, and on 21 U.S.C. § 176a. Jurisdiction here is found in 28 U.S. §§ 1291 and 1294.

Appellant urges seven grounds of error, three based on the admission or re-

jection of evidence; two on alleged improper argument by government counsel to the jury; one an error in instructions; and the last an alleged insufficiency of the evidence.

We find no error, and we affirm the conviction. We examine each ground alleged in turn, but the last first.

## I—INSUFFICIENCY OF THE EVIDENCE

■ In this case no explanation was made by either defendant of how or why the marijuana, in wholesale quantity, was found in the automobile which defendants occupied.

Appellant had a perfect right not to explain. He had a perfect right to remain silent, both at the scene of his arrest and in court. But he did not choose to do so. He talked at the scene of his arrest; not before the jury.

The border police observed the approach of defendants' automobile to the border in the early hours of April 14th, 1963. Both occupants appeared nervous. They were individually searched, and the

loaded gun was found on Klepper, A more careful search of the automobile then revealed the marijuana. The two men were arrested. Previously, before the marijuana was found, when asked about the gun, Klepper stated (in explaining why he had cut the points of the bullets): "If you are going to shoot anybody you might as well do a good job." This was in the presence of Baumgardner. Baumgardner had picked up Klepper the night before, but could not remember where. Klepper admitted only that he had smoked marijuana in 1962. (See discussion re admissibility of this statement, infra.)

There is no question but that marijuana was being illegally imported in the car the two defendants were bringing across the border. The sole factual question in dispute was—did the defendants know the marijuana was in the car? It was possible they did—it was possible they did not. This was a fact for the jury to determine.

The instructions and comments given to the jury by the trial judge were, in material part, as set forth in the margin.[1]

1. "[W]ith respect to major crimes, such as charged in this case, specific intent must be proved before there can be a conviction.

"Specific intent, as the term itself suggests, requires more than a mere general intent to engage in certain conduct.

"A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found to act with specific intent.

"An act or failure to act is done knowingly if done voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason.

"For hundreds of years, from the days of the Common Law of England, this specific intent was required for a felony and it is referred to as a 'mens rae.' (sic) The easiest way to describe it in English is that it is acting with an evil motive or bad purpose, a sense of wrong doing. No one should be convicted of a felony unless he has a sense of wrong doing, and that is what I am trying to tell you about.

"It is not necessary for the prosecution to prove knowledge of the accused that a particular act or failure to act is a violation of the law. Unless and until outweighed by evidence to the contrary, the presumption is that every person knows what the law forbids and what the law requires to be done. However, evidence that the accused acted or failed to act because of ignorance of the law is to be considered in determining whether or not the accused acted or failed to act with specific intent as charged.

"Intent may be proved by circumstantial evidence. It is rarely possible to prove it by any other means. Notwithstanding the advances we have made in science, there is no way to produce for you a photostat or a blueprint or a picture of a man's intent. But what defendants do and say, and do not do, may be considered by you on this issue of intent.

"In determining the issue of intent the jury are entitled to consider any evidence of statements made and acts done or omitted by the accused, and all facts and circumstances in evidences which may aid determination of state of mind.

"Now, going back to some examples on possession and also specific intent, I will

We think these instructions and comments on this phase of this case, under the facts here involved, were exemplary. We think them fair to both defendants and the prosecution. We think them valid in legal principle. Appellant objected at the trial to the court's comments because allegedly "incomplete" and because they "exceeded fair comment." No specification of detail or further explanation of the objection was made. We find no merit in the objection, either as raised below, or as raised on this appeal. A careful reading of the transcript re-

show you what I mean. These are silly examples and probably wouldn't happen, but they will illustrate what I am talking about. Let us suppose X goes to Tijuana and he intends to go down there and buy some marijuana and bring it back into the country, or intends to buy some smaller package of heroin. So there is no question about his guilty mind. This is his intent. He goes out and buys the heroin and slips it in his pocket or tries to conceal it somewhere and crosses the line. But somewhere along before he crossed the line it got out of his pocket and he lost it. He crossed the line. No crime was committed. What he did in Mexico in buying it is not a crime against our law. When he crossed the line he did not have it, so he did not import it. He had the intent. He thought when he crossed the line he did have it. He had the evil purpose or bad motive. But he didn't do the act, because he didn't carry it across the line.

"Conversely, if X walked toward the border and saw on the sidewalk an inch square wrapped in tissue paper, with a nice little wrapper around it, and picked it up and put it in his pocket and did not look to see what was in it—this is what I say is a silly example, because I am not going to pick up a package and carry it across the line without knowing what I am carrying—but assuming that he did, he had possession, as a layman would say; but he didn't have knowing possession—he didn't know it was heroin. Therefore, he had no specific intent—he had no evil motive or bad purpose. He did the act, but he didn't have the necessary mental purpose and intent. That is as well as I can do to try to explain to you what I mean by these things.

"The law of the United States permits the District Judge to comment on the evidence in the case. I am permitted even to comment whether I believe or disbelieve a certain witness. I don't intend to do that. I intend to give you a few comments, and you may disregard them entirely, since you are the sole judges of the facts.

"First, in my opinion, I don't think there is any dispute that this substance is marijuana.

"Secondly, in my opinion, the car approached a checking place within a hundred feet of the border where only cars coming from Mexico could get into the lane. In my opinion, there is no doubt but that the marijuana was imported, and I would suggest to you, my advice, which you may disregard, is to waste no time talking about whether this was marijuana and whether it was imported.

"The real issue in the case is, what knowledge the defendants had, what their intent was. If they did not know the marijuana was in the car, then the case is clear—acquit them, because if they did not know the marijuana was in the car they certainly should not be convicted.

"Therefore, in deciding this case you really have one issue: What knowledge did either or both of these defendants have? And in considering that you have only a few pieces of evidence. You have the statement of the Agent that they were nervous when they approached the border. You have the testimony, which I will not try to summarize, about dirt or grease on the hands of the defendant Baumgardner. You have the loaded gun in the possession of defendant Baumgardner, which however may only be considered as to Baumgardner—pardon me— in the possession of defendant Klepper, which may only be considered as to Klepper. Then you have the statement of Klepper to the Agent that he had smoked marijuana at one time, which is definitely limited to the question whether Klepper had any knowledge of what marijuana was and what it looked like. We have the further fact that Baumgardner was driving the car, and the fact that the car belonged to the mother or father—I forget which.

"Your sole issue in this case is, what was their state of mind? Did they know the marijuana was there, or did they not know it was there?

"That is the end of my comments. You are the sole judges of the facts. Don't try to guess what I think about this case. It is not my responsibility to decide the facts. If a jury had been waived and the case had been tried to the Judge, the Judge then would decide the facts and apply the law. When the defendant has a

veals sufficient evidence to present a question of fact to the jury.

## II—ALLEGED EVIDENTIARY ERRORS

The evidentiary matters alleged as error are three in number: (a) The admission of appellant's statement he had previously once used marijuana, a year before the arrest, in 1962. (Rep's Tr. pp. 103–111.) (b) The admission of appellant's statement with respect to the gun he carried and its bullets. (Rep's Tr. p. 57.) (c) The refusal to admit evidence offered from the appellant's father that appellant had had a thorough training in

firearms and their use, and had owned many guns. (Rep's Tr. p. 215).

 The government's offer with respect to (a) above was made out of the presence of the jury. (Rep's Tr. p. 101.) It was offered to prove appellant knew what marijuana was. Appellant's counsel then inferentially, though not specifically, offered to stipulate that appellant "was able to recognize marijuana when he saw it." (Rep's Tr. p. 108.) The government inferentially refused to stipulate. The testimony was given. The court then gave a careful cautionary instruction.[2]

jury it is the jury's responsibility to determine the facts. * * * " (Rep's Tr. pp. 283–288.)

2. "This evidence as to this statement made by defendant Klepper, comes within the category of what we would call an admission. The Court instructs you now, and it will instruct you later, that an admission made by a defendant outside the courtroom should be weighed with caution and considered with care. I am not saying it is an admission. I am saying it might be characterized as that. That is a matter for you to determine. But you are instructed that if it is an admission it must be viewed with caution and considered with care. Secondly, it is admitted only on the limited issue as to whether or not the defendant Klepper knew anything about the nature of marijuana. That is the sole purpose. It may not be considered by you under what we call the 'bad-boy statute,' because if you believed that he at one time had smoked marijuana, therefore it is more likely that he committed this offense—it may not be considered for that purpose. Nor may it be considered for the purpose where you might attempt to draw the inference that he having said he smoked marijuana at one time, assuming you believe the Agent, therefore he might be bringing marijuana for his own use—it may not be considered for that purpose. It may be considered only for the purpose of his knowledge as to the nature, character and appearance of marijuana. "Are we clear about this now? "Do you want any further limiting instruction, Mr. Ward? "MR. WARD: Your Honor, I am not in a position to ask even for a limiting instruction, because we feel that the testimony is not admissible.

"THE COURT: Approach the Bench. "(Whereupon, counsel and defendant Klepper approach the Bench and the following proceedings are had out of the presence and hearing of the jury:) "MR. HERMAN: Your Honor, do you want the other defendant and counsel? "THE COURT: It is up to the other defendant. This doesn't concern— "MR. WARD: I don't believe it pertains to Baumgardner. "THE COURT: It doesn't concern you. "Defendant and counsel present. "Without abandoning your position, do you have any objection to the instructions I gave—without abandoning your position that this is not admissible? "MR. WARD. I would like to request one further instruction, and that is that the evidence should not be considered by the jury on the question of whether or not the defendant Klepper knew that the substance was in the car. "THE COURT: I will give that. "Do you have any further objection to what I gave, without abandoning the position you have taken before? "MR. WARD: No, your Honor. "THE COURT: All right. "(Whereupon, the proceedings resumed before the jury as follows:) "THE COURT: I have told you one way in which you can consider this evidence—solely on the question of knowledge on the part of the defendant Klepper of the nature and appearance of marijuana, ladies and gentlemen. I have told you several ways you may consider it. "I will tell you one more way you may not consider it. You may not consider it as any evidence on the question whether or not the defendant Klepper knew there was marijuana, if there was marijuana, in the car or in the package in the car. It is not admissible for that purpose. It is

For the limited purpose for which this statement was introduced, it was admissible.[3] Teasley v. United States, 9 Cir. 1961, 292 F.2d 460, 467; Anthony v. United States, 9 Cir. 1958, 256 F.2d 50; Wright v. United States, 9 Cir. 1951, 192 F.2d 595, 596–597. Cf.: Enriquez v. United States, 9 Cir. 1963, 314 F.2d 703 at 713.

▇▇▇ The government's offer to prove appellant's statement with respect to the gun and dum-dum bullets, was likewise first made outside the presence of the jury. (Rep's Tr. p. 52.) The appellant's admissions as to prior arrests were properly not offered by the government; and the court, out of the jury's presence, admonished the prospective witness not to let appellant's alleged admissions with respect to serious felony charges previously made against him "slip" into evidence. (Rep's Tr. p. 55.)

Each defense counsel told the trial court their defense was that "they didn't know about marijuana being in the car, and that the gun came from the United States." (Rep's Tr. p. 55.) The court then stated (again out of the jury's presence):

"THE COURT: Then I think it is admissible. If they claim they were innocent and had no knowledge of the marijuana, the fact that they had a loaded gun and that the bullets had been cut with a cross and one defendant said, 'If you're going to shoot somebody, you might as well—

"What was the word?

"THE WITNESS: 'You might as well do a good job.'

"THE COURT: —would indicate somebody engaged in a criminal venture and not an innocent man, with contraband in the car. Whether you like it or not, that is my ruling, and I don't think I am wrong.

"MR. BUSBY: That's still being limited to the defendant Klepper?

"THE COURT: At this time, yes.

"MR. BUSBY: Still.

"MR. WARD: I believe that you can't convict a man because he is a bad boy.

"THE COURT: No, I will give any instruction that is proper there. But here is an issue going to be presented to this jury: Were these two innocent men who drove the car across not knowing there was marijuana in it? Or were these two men engaged in a criminal venture bringing marijuana across? The fact that one of them had a loaded gun and made this remark is certainly a fact that a jury may consider to determine his knowledge and intent. Was he engaged in a criminal venture, or was this an innocent trip on his part? I don't think there is any question about it.

"MR. WARD: I do. But that is the Court's ruling.

"THE COURT: All right, let's go back."

(Rep's Tr. pp. 55–56.)

The evidence then came before the jury and without request, the court carefully admonished the jury with respect to it.[4]

---

not admissible for any purpose except the one ground I admitted it on.
 "All right, proceed."
 (Rep's Tr. pp. 112–114.)

3. We can, of course, speculate why, if the alleged admission was offered for the sole purpose of showing knowledge in defendant of what the smuggled substance was, the Assistant United States Attorney would not stipulate, as defense counsel suggested might be done. But, again, we could likewise speculate why defense counsel, if he really wanted to stipulate

the fact of defendant's knowledge as to marijuana, would not make a formal offer to stipulate the fact, not merely ask the court a hypothetical question (Rep's Tr. p. 108.) Trial tactics sometimes assume different appearances under scrutiny of an appeal.

4. "THE COURT: This testimony is admitted only as to the defendant Klepper at this time and not as to defendant Baumgardner.
 "And the Court also instructs you to this effect. These men are charged with

■ The government's objection with regard to (c) above was argued outside the presence of the jury, at the bench. (Rep's Tr. p. 215.) Prior thereto, the defense had established that (1) the gun had been in appellant's possession for years (Rep's Tr. p. 214, lines 5–17); (2) that appellant's father knew about it and approved his son's having it (Rep's Tr. p. 214, lines 18–22); that his father had trained him in the use of firearms, for more than eight years (Rep's Tr. pp. 214–215).

Counsel for defendant then sought to have the witness describe the nature of the training given his son, and offered to prove the three facts already in evidence (as set forth in the paragraph above), and, in addition, two other facts: (4) that the gun was hung in a rack in his son's room for years; (5) that appellant owned many other guns.

The court sustained an objection to the offer, and instructed the jury as follows:

"The Court has instructed Mr. Ward not to pursue further this inquiry into the training of the son by his father in the use of the gun and matters of that sort. It is entirely proper for Mr. Ward to prove what he has proved up to the stage I stopped him. But things he started to go into are immaterial.

having smuggled marijuana into the United States and having smuggled a gun into the United States. They are not charged with the crime of possessing a loaded gun. We don't have what is spoken of facetiously as a 'bad-boy statute,' and we don't convict defendants because we think they are bad boys. You are to convict them only if the Government, beyond a reasonable doubt, proves the charges made in the particular counts of the Indictment presented to you.

"Now, we do not know at this time what the defense of the defendants will be, and as the case develops this testimony may become material or it may not be material. For example, if the defense of these two defendants is that they didn't know the marijuana was in the car and that they were just innocently coming back from Mexico, then the fact that

"And this will apply, Mr. Ward, to other witnesses you might have, if you have any, who would testify to things such as the father's instructing the son in the use of firearms and the gun being kept on a rack or something in the house as part of a collection, and things of that sort."

Again, we find no error in either the court's ruling, or its explanation thereof to the jury.

We emphasize the foregoing instructions to the jury were all given during the progress of a short two day trial. The jury was likewise again carefully instructed in detail at the conclusion of the arguments, particularly on knowledge, specific intent, knowing possession, etc. (Rep's Tr. pp. 264–292, particularly pages 273 to 288, and see note 1, supra).

Again, we find no error in the court's ruling barring the offered evidence.

## III—ALLEGED MISCONDUCT OF THE UNITED STATES ATTORNEY

■ The United States Attorney is charged with misconduct in two of his comments to the jury: *First,* that the two defendants "did not give any particular explanation" of their trip into Mexico;[5] had no "legitimate story to tell the Customs Inspector as to why he went to Mexico" (Rep's Tr. p. 226), and that appellant told "partial stories." (Rep's Tr. p. 228.)

there was a loaded gun and this remark made by Mr. Klepper might be considered by you in determining whether or not this was an innocent trip in which they had no knowledge of the marijuana, or whether Mr. Klepper and his associate were engaged in an illegal venture and had the gun along for that purpose.

"Presently, however, the testimony is admitted only as to defendant Klepper." (Rep's Tr. pp. 57–59.)

5. The actual statement, in context, was (Rep's Tr. p. 225):
"There was a short trip down and they were caught on the way back with the marijuana in the car, both of them were caught, and they don't give any particular explanation—although they do talk to some extent to the Customs Agent and the Customs Inspector. No real explanation."

We think this emphasizes the significant fact that defendants talked a little but not much. They were not required, after arrest, to say anything. Both before and after arrest they said little, but did state certain things. They expressed no real reason for their trip—or for the loaded gun in pocket. Neither appellant chose to remain entirely silent. The United States Attorney could comment, within proper limits, on what explanation defendants had chosen to make. We hold the United States Attorney here did not exceed those proper limits. Dyson v. United States, 9 Cir. 1960, 283 F.2d 636, cert. den. 366 U.S. 974, 81 S.Ct. 1944, 6 L.Ed.2d 1264.

Appellant argues that "mere silence" cannot be used against him on his trial. We agree. We agree silence can properly aid the innocent and the guilty. But this was not "mere silence."

This comment by the United States Attorney was first interpreted by defense counsel to be adverse comment "on the failure of the defendant Klepper to take the stand" (Rep's Tr. p. 263). When the trial judge flatly advised counsel this was not so, appellant's counsel urged that the United States Attorney's comment on what Klepper did say was comment on his failure to "take up the burden of going forward and explaining his conduct." (Rep's Tr. p. 263.) The trial court saw no merit to this suggestion, nor do we.

Appellant also urges as an example of misconduct the United States Attorney's argument that inasmuch as defendant Klepper knew what marijuana was, that "he could be selling marijuana without his father knowing it. He could have received the marijuana on consignment to sell it later for income," and the "mere fact he had no money is not very persuasive." (Rep's Tr. p. 228.) This was all to anticipate the argument of appellant's counsel that neither defendant had money when arrested, and therefore could not have purchased the marijuana in Mexico.

No objection to this line of argument was made when it was used. At the conclusion of argument, defendant Klepper's counsel objected that it was an argument to the jury, "a theory about which there is no evidence." (Rep's Tr. p. 263.)

Of course, no theory is evidence, but there can be many theories about evidence. Nor is argument evidence, as counsel for defendant Klepper reminded the jury.[6] And under the circumstances existing in this case, we find the "comment" or "theory" expressed by the government well within the bounds of "accepted" and "proper" argument to the jury. We do not find cases such as United States v. Toscano, 2 Cir. 1948, 166 F. 2d 524,[7] and United States v. Russo, 2 Cir. 1960, 284 F.2d 539,[8] pertinent or applicable.

6. We assume counsel for defendant approves of this rule of law, for he "commented" to the jury as follows:

"The United States, of course, has unlimited funds. We know where they get it. They have the FBI and the Customs Agency, the Narcotics Bureau, the Army, the Navy, Air Force, Marine Corps, everything they need in their search for truth. They have well trained, competent, experienced counsel to try their cases. Mr. Herman here came all the way from Los Angeles just to try this case. And they are able to prepare their case and to complete it before the accused even gets out of jail. I submit to you that that is one reason why the burden is on the Government. There is no obligation to share any evidence with the defendant, and there is really no way the defendants can make sure that the Government is diligent in its search for the truth." (Rep's Tr. pp. 234-235.) We find no reference in the transcript to evidence that the Armed Services of the United States aided or participated in obtaining evidence against the defendants.

7. There the United States Attorney commented in argument on "fingerprints" of appellant on the contraband drug package, which the government allegedly was "prepared to prove," but never *did prove*, nor attempt to prove, the fingerprints existed.

8. There the United States Attorney created a hypothetical telephone conversation (n. 4, p. 542). This should not have been done, says Judge Leonard Moore (himself a former United States Attorney), yet "this hyperbole of forensic advocacy did not deprive Russo of a fair trial."

Appellant's position that the two comments made by the United States Attorney violated the Fifth Amendment, or that they were so inflammatory and improper as to require reversal, is without merit. As stated in Russo, supra, 284 F.2d at page 542:

"A reading of the entire summation together with the trial judge's comments and charge reveals that defendant was not prejudiced by the prosecutor's remarks."

We add that a reading of the entire record before us brings us to a similar conclusion.

IV—ALLEGED ERROR IN INSTRUCTING THE JURY THAT PROOF OF POSSESSION OF MARIJUANA WITHOUT EXPLANATION, IS SUFFICIENT TO CONVICT

■ This refers to the instruction given at pages 273 and 274 of the Reporter's Transcript. We set it out in the margin.[9]

Appellant's principal thrust here is that there was no sufficient evidence of possession to justify bringing into play the presumption created by 21 U.S.C. § 176a. We have discussed the sufficiency of the evidence to create questions of fact—(1) as to possession itself and (2) whether (possession being established) it was a knowing possession.

If each question was answered in the affirmative by the jury, then the presumption was called into play. Assuming an affirmative answer to each question, the inference presumed bears a rational nexus to the evidence.

Appellant argues there is no evidence here[10] tending to prefer a factual finding of Mexican origin of the marijuana over origin in the United States. The Mexican origin of the drug and its unlawful importation was established by the eyesight of the border officials: They *saw* the vehicle, in which the marijuana was concealed, physically come across the imaginary border line. What better proof is needed?

As to the validity of the presumption, and its rational basis, see Costello v. United States, 9 Cir. 1963, 324 F.2d 260, cert. den. 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650; Anthony v. United States, 9 Cir., 331 F.2d 687, distinguishing De

---

9. "Now, the possession that is talked about in that section is a knowing possession. As laymen we may assume that what you have in your pocket you are in possession of, or what you carry in your car you are in possession of. But legally where a defendant is charged with a felony he must know that he has possession of the article, or it is not the kind of possession the law talks about.

"You will notice that I read the statute to you that whenever it is shown that a defendant has or has had possession of marijuana, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury. The statute just read does not change the fundamental law that a defendant is presumed innocent until proved guilty beyond a reasonable doubt. Nor does it impose upon a defendant the duty of producing proof that marijuana was not unlawfully imported, or any other evidence. As previously stated, the burden is always on the prosecution to prove guilt beyond a reasonable doubt. What the statute means is that upon a trial for violation thereof, if the jury should find from the evidence, beyond a reasonable doubt, that a defendant has had knowing possession of marijuana, you are refact of such possession alone, unless explained to the satisfaction of the jury, permits the jury to draw the inference that the marijuana was imported contrary to law and to draw the further inference and find that the defendant had knowledge that the marijuana was imported contrary to law.

"In connection with any explanation the defendant may choose to offer for possession of marijuana as charged, the minded that in the exercise of his constitutional rights the defendant need not testify. Possession, however, may be explained through other circumstances and other evidence independent of testimony of the accused." (Rep's Tr. pp. 273–274.)

10. Unlike Caudillo v. United States, 9 Cir. 1958, 253 F.2d 513, cert. den. sub. nom Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373; Butler v. United States, 9 Cir. 1959, 273 F.2d 436.

Rose v. United States, 9 Cir. 1963, 315 F.2d 482, cert. den. 375 U.S. 846, 84 S. Ct. 99, 11 L.Ed.2d 73; Erwing v. United States, 9 Cir. 1963, 323 F.2d 674. And see Hernandez v. United States, 9 Cir. 1962, 300 F.2d 114 at 118–119.

Finding no error, the judgment is affirmed.