**Donald F. LANNOM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21243.**

United States Court of Appeals Ninth Circuit.

Aug. 23, 1967.

Rehearing Denied Oct. 11, 1967.

---

859

Peter Hughes, Sheela, O'Laughlin & Hughes, San Diego, Cal., for appellant.

Edwin L. Miller, Jr., U. S. Atty., Phillip Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS and ELY, Circuit Judges, and FERGUSON, District Judge.

FERGUSON, District Judge:

Appellant was convicted in a jury trial for violation of 21 U.S.C. § 176a, by an information which charged that he, with intent to defraud the United States, knowingly concealed and facilitated the transportation and concealment of approximately 88 pounds of marihuana, which marihuana, as he well knew, had

been brought into the United States contrary to law.

Appellant seeks reversal on the basis of four asserted errors: (1) refusal to require disclosure of the identity of an informer in order to test his reliability on the issue of probable cause for search and seizure; (2) refusal to require disclosure of the informer on the issue of guilt or innocence; (3) an instruction to the jury that possession was evidence of illegal importation and knowledge thereof; and (4) the evidence was insufficient as a matter of law to sustain the conviction.

On November 18, 1965, the day before the arrest, Customs Agent Walter Gates, stationed at the San Ysidro border station, across from Tijuana, Mexico, was told by an informant that a blue 1950 Mercury, California license EIC 132, would enter the United States from Mexico the next morning sometime after 9:00 o'clock. Agent Gates was told that the Mercury would contain a quantity of marihuana, would be driven into San Ysidro, parked at a laundromat and picked up when the driver had returned to Mexico. Agent Gates had known the informer for about six years, and he had provided information that had led to three previous arrests, one of which was four months prior to the arrest of appellant. Agent Gates told Customs Agent Clarence Spohr of the information he had received and directed Spohr to stand by for a surveillance.

At 10:08 A.M. on November 19, 1965, Customs Agent Donald Carter observed the Mercury cross the border, driven by an adult male, with a child as a passenger. After entering, it was driven off the highway and parked behind a laundromat in San Ysidro. The driver and the child left the automobile and walked toward the border.

Agent Carter and Customs Investigator Gore had the Mercury under constant surveillance. At approximately 1:25 P.M. Investigator Gore watched a 1956 Ford park near it. Two men, one of them the appellant, got out, walked over to the Mercury and looked inside. One

of them twice got in and out. Five minutes later the appellant entered the Mercury and drove it away. When informed of this by radio, Agent Spohr gave an order to arrest the driver. Twenty minutes later, at a point 1½ miles from the border, the Mercury was stopped by Customs Agent Thaine Ellis. Investigator Gore, who had been following, removed an interior side panel and found a package of marihuana. The automobile was returned to the border station where a thorough search revealed approximately 88 pounds of marihuana, most of which was in a metal container welded under the frame.

The government agents did not have a search warrant nor a warrant of arrest. They had paid the informer $200.00 for the information that he had supplied. The marihuana was worth $1,560.00 in Mexico.

Prior to trial the appellant moved to suppress, claiming the marihuana to have been obtained as the result of an unlawful search. The motion was denied on the ground that the search was a border search.

At the trial, outside the presence of the jury, Agent Gates was called by the defense for the purpose of establishing that the informer was a material witness on the question of the appellant's guilt or innocence. At this hearing it was established that the informer initially contacted Agent Gates on November 14th. Gates was told that a 1950 Mercury had been purchased in Tijuana and would be used to import marihuana. He was given the name and identity of the purchaser. On November 18th, the day before the arrest, the informer contacted Gates twice. The first time he told Gates that the Mercury would be driven into the United States but would not contain contraband, the purpose being to determine whether or not it had been placed on a "lookout". At the second contact, Gates was told that the marihuana had been loaded, this having been witnessed by the informer. A motion that his identity be revealed on the ground that he could give material tes-

timony on the question of guilt was denied.

With respect to the issue of revealing the identity of the informer for the purpose of testing his reliability, appellant concedes the rule that a border search is an exception to the general requirement of probable cause which must support a search. Alexander v. United States, 362 F.2d 379 (9th Cir. 1966), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). He contends, however, that the search here was not a border search for the reason that the appellant had not driven the automobile into the United States.

After the appeal and briefs were filed in this case, Rodriguez-Gonzales v. United States, 378 F.2d 256 (9th Cir. 1967), was decided on May 11, 1967. The facts there were almost identical with those here. In both cases the appellants were not present when the automobiles were driven across the border but drove them away after they had been parked in the United States. In *Rodriguez-Gonzales* this court held that the search was a valid border search. The trial court here was correct in so finding. Further justification for denying the motion is set forth in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 2d 62 (1967), where it was held that the identity of the informer need not be disclosed on the issue of probable cause.

Appellant alleges, however, that the informer's identity should be disclosed as he was a material witness on the question of guilt. It was established that the informer was present when the marihuana was placed in the automobile in Mexico. It is further established that the appellant was not present when the car was loaded, nor was the informer present when the appellant was arrested in the United States. In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), it was held that the informer there must be disclosed when he was an active participant in the crime in that he "had taken a material part in bringing about the pos-

session of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged". 353 U.S. at 55, 77 S.Ct. at 625. The "informer was the sole participant, other than the accused, in the transaction charged". 353 U.S. at 64, 77 S.Ct. at 630.

Here the trial judge asked "for some tangible evidence that would allow the Court to find that the informant could be of assistance in the defense of the case". No such evidence was presented, and the record discloses nothing except mere speculation. The trial court was eminently fair in protecting the rights of the appellant. It sought in all ways possible, outside the presence of the jury, to have appellant present any evidence whatsoever that the identity of the informer could assist in his defense. Mere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer. See McCray v. State of Illinois, *supra*. The claim that the informer was a participant was merely hopeful thinking. Hurst v. United States, 344 F.2d 327, 328 (9th Cir. 1965).

Appellant, however, contends that the denial of the identity of the informer foreclosed him from showing that the informer was the driver of the Mercury into the United States. The trial court precluded the appellant from determining whether or not the informer actually loaded the marihuana into the automobile. From this, appellant claims he was not permitted to explore the possibility of the informer transporting it across the border. It is argued that if the description of the informer would have matched that of the driver, then it would have been established that the informer was the driver. However, appellant was not stopped at any time from reaching the issue of the identity of the driver directly, and he has no just cause to claim error. In fact he asked the agents if the informer ever told them that he was

the driver and was told that the informer did not. His position is similar to that in Miller v. United States, 273 F.2d 279 (5th Cir. 1959), cert. denied, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960). "If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more." 273 F.2d at 281.

■ Appellant argues that it was error to include the statutory possession presumption under 21 U.S.C. § 176a in the instructions to the jury. He claims that the following in Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), is applicable:

"[W]e are of the opinion that there is no rational connection between the unexplained possession of the cocaine hydrochloride and the presumed fact that such narcotic drug was illegally imported to the knowledge of the appellant, and that the inference of the one from the proof of the other is arbitrary because of lack of connection between the two in common experience." 323 F.2d at 682.

A complete answer is found in Klepper v. United States, 331 F.2d 694 (9th Cir. 1964):

"The Mexican origin of the drug and its unlawful importation was established by the eyesight of the border officials: They *saw* the vehicle, in which the marihuana was concealed, physically come across the imaginary border line. What better proof is needed?" 331 F.2d at 702.

■ Lastly, it is claimed that the evidence is insufficient to support the verdict. The same charge was made in *Rodriguez-Gonzales v. United States, supra,* and it was held that the assertion was patently without merit.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The district judge, in line with the offense which was charged, properly instructed the jury that it was required to determine, as a requisite for conviction, "that the defendant knew that the marijuana had been imported or brought into the United States contrary to law."

The Government had been informed that the importation would occur in the Mercury automobile, specifically identified. Its agent actually observed the transportation across the international frontier. He saw the driver of the vehicle in which the contraband was concealed. That driver was not the appellant,[1] and his identity was either known to the Government or might, by it, have been easily ascertained. The prosecution refused the request of the accused that he be supplied with the name of the informer, and I do not now question the refusal of the district judge to require the requested revelation. I do, however, because of the circumstances which I have outlined, challenge the propriety of authorizing the jury to infer, from the fact of the accused's subsequent possession of the contraband, that the accused "knew that the marijuana had been imported into the United States, illegally, contrary to law."[2]

The prosecution should have been required to prove, at the very least, that

---

1. In Klepper v. United States, 331 F.2d 694 (9th Cir. 1964), emphasized by the majority, border police observed the automobile in which contraband was concealed as it crossed the border. The vehicle was being driven at that time by an identified friend of the accused, and the accused was observed as a passenger.

2. When the accused objected to the instruction, it appears that the Government attorney himself questioned its applicability. Said he, "What I am saying is that since we have direct evidence of the smuggling by the person who drove it in, I don't see any need to use the statutory presumption to prove that it was imported."

the Government itself did not, through one of its own agents, accomplish the importation. If the Government itself imported the marijuana, it is indeed anomalous that it is now permitted to say that the accused "knew" that the substance had been imported "illegally, contrary to law." Believing it to have been erroneous to instruct the jury as to the presumption in the light of the peculiar facts of this case and the lack of proof in the particular which I, in the circumstances, would require, I would reverse.[3]

3. I cannot see that the majority attempts to answer the question which troubles me. Significantly, it does not mention the two cases upon which the Government, in its brief, relies. These are Haynes v. United States, 319 F.2d 620 (5th Cir. 1963), cert. denied, 375 U.S. 885, 84 S.Ct. 161, 11 L.Ed.2d 115 (1963), and Miller v. United States, 273 F.2d 279 (5th Cir. 1960), cert. denied, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960). Neither is in point.

Compare United States v. Taylor, 266 F.2d 310 (7th Cir. 1959), cert. denied, 361 U.S. 853, 80 S.Ct. 96, 4 L.Ed.2d 92 (1959), wherein Government agents, informers, did not transport the contraband until it had already been imported into the United States.