**UNITED STATES of America,
Appellant,**

v.

**JILES, Anthony, Appellee.**

**No. 80–2707.**

United States Court of Appeals,
Third Circuit.

Argued May 22, 1981.

Decided Aug. 28, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1981.

Robert L. Hickok, Asst. U.S. Atty. (argued), Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief, Appellate Div., Philadelphia, Pa., for appellant.

Albert John Snite, Jr., Asst. Defender, Defender Association of Philadelphia, Philadelphia, Pa. (argued), for appellee.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

The Government appeals in this case from two orders of the United States District Court for the Eastern District of Pennsylvania. The first order dismissed the indictment against appellee, Anthony Jiles, because the Government refused to disclose the identity of a confidential informant. The second order suppressed an identification from a photographic display, and a post-arrest statement resulting therefrom, because the display contained a picture of appellee secured from his juvenile records. We will reverse both orders.

### BACKGROUND

The appellee in this case, Anthony Jiles, was indicted on June 17, 1980, and charged with an assault on Postal Service Carrier Daniel A. Kuzan.[1] At the pretrial hearing, Kuzan testified that on May 5, 1980, while he was on his route in North Philadelphia, he was pushed into an alley and "mugged" by three young men. The assailants stole Kuzan's wallet but were unable to take his keys or mail. Kuzan observed the faces of two of his assailants during the assault.

After he reported the incident to local police, Kuzan described two of his assailants to postal inspector Edward Alegado. Inspector Alegado, through the use of an "identikit," prepared sketches of the assailants.

The next day, on May 6, 1980, Postal Inspector Ostwalt presented an array of photographs to Kuzan, based on the composite sketches from the day before; he asked Kuzan if he could identify his assailants from the pictures. Appellee's picture was not in this first group of photographs and Kuzan did not recognize any of the portraits.

Within a week after the assault, a confidential informant, who was an eyewitness to the assault, identified appellee, Anthony Jiles, as one of the assailants. The informant provided this information in return for a promise of complete anonymity.

Based on this information, Inspector Ostwalt sought from the Philadelphia Police Department any available photographs of Anthony Jiles. Because appellee's records were related to juvenile proceedings, Ostwalt was required to secure special approval for their release. He consulted with Captain Anthony Pace of the Philadelphia Police, who in turn presented the problem to Frank Cavanaugh, Captain of the North Central Detective Division. Captain Cavanaugh approved the request for Jiles' photograph.

After the postal inspector obtained appellee's photograph, he prepared a second display of photographs, this time with appellee's picture. This photographic array was shown to the mail carrier on May 19, 1980, and he identified the appellee's photograph as being that of one of the persons who had assaulted him on May 5, 1980. After this identification, Kuzan asked the postal inspector whether the photograph he selected was that of one of his assailants. The

---

1. The indictment charged appellee with violation of 18 U.S.C. § 111 (1976) (assaulting federal officer or employee); 18 U.S.C. § 371 (1976) (conspiracy to assault); and 18 U.S.C. § 2114 (1976) (assaulting mail carrier with intent to rob).

postal inspector responded: "It could be. We have received some information that it could be the guy." Appendix at 46.

Primarily on the basis of this information, a warrant for the arrest of Jiles was issued on May 20, 1980. The appellee was arrested on May 21, 1980, and, after being advised of his constitutional rights, he issued a post-arrest statement. Appellee admitted to being in the general vicinity at the time of the assault but claimed that two other individuals, "Benny" and "Benny's friend", actually attacked Kuzan.

The appellee was indicted on June 17, 1980. Following his indictment, appellee's counsel brought several suppression motions. They included: (1) a motion to suppress the identification of appellee from the photographic display; (2) a motion to reveal the identity of the confidential informant; (3) a motion to suppress the 'defendant's post-arrest statement; and (4) a motion to suppress any in-court identification of the appellee by Kuzan. Following hearings on these motions, the district court granted the first three, but denied the fourth.[2] The judge/court ordered that appellee's counsel be provided with an opportunity to meet with the confidential informant and that the identification of appellee's photograph and appellee's post-arrest statement be suppressed.

The Government advised the district court that it could not breach its promise of anonymity to the confidential informant and, therefore, would not comply with the disclosure order. In response to the Government's position, the district court, pursuant to Fed.Crim.R.Proc. 48(a), dismissed the indictment against the appellee.

The Government brings this appeal pursuant to 18 U.S.C. § 3731 (1976).

*DISCUSSION*

Two issues are raised in this appeal: First, did the appellee make a sufficient showing of need to be entitled to the identity of the confidential informant? Second, were appellee's constitutional rights violated by the federal authority's use of his juvenile arrest photograph? We will address each issue separately.

A. *Disclosure of Confidential Informant*

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59, 77 S.Ct. at 627. It held, however, that this privilege is not without limitations. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 627–28 (footnote omitted).

While there is no fixed rule as to when disclosure is required, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967), the Court in *Roviaro* stated that once a defendant sets forth a specific need for disclosure the court should balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628. The result of the balancing will depend upon the particular circumstances of the case, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* See generally Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 161–66 (1974). See also *Mitchell v. Roma*, 265 F.2d 633 (3d Cir. 1959).

When applying this test, one of three types of cases may emerge. See *Suarez v. United States*, 582 F.2d 1007, 1011 (5th Cir. 1978). First, the court may be presented with an extreme situation, such as that in *Roviaro* itself, in which the informant

---

**2.** Though Jiles could not file an appeal from the District Court's ruling on point (4), he did brief the problem, citing *United States v. Moody,* 485 F.2d 531, 534 (3rd Cir. 1973) as our authority to review a ruling adverse to the appellee below. Since we now decide this case on points (1), (2) and (3), there is no purpose in discussing point (4).

played an active and crucial role in the events underlying the defendant's potential criminal liability. In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial. *See, e. g., United States v. Silva*, 580 F.2d 144, 146–47 (5th Cir. 1978). *But see United States v. Day*, 384 F.2d 464, 468 (3d Cir. 1967) (McLaughlin, J., concurring) (Active participation should not be deciding factor in disclosure decision). At the other end of the spectrum are the cases in which the informant was not an active participant or eyewitness but rather a mere tipster. In such cases, courts have generally held that the informant's identity need not be disclosed. *See, e. g., United States v. Moreno*, 588 F.2d 490, 494 (5th Cir. 1978), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 666 (1979).[3] A third group of cases falls between these two extremes and it is in this group that the balancing becomes most difficult.

Appellee's case falls within this third group. While the confidential informant did not participate in the criminal activity, the informant was an eyewitness to the assault. Thus, while there is nothing on the record to so indicate, the informant may be helpful to appellee's defense.

■ As mentioned, the first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure. The burden is on the defendant to show the need for disclosure. *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976), *cert. denied sub nom. Temple v. United States*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977); *United States v. Scott*, 555 F.2d 522, 529 (5th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 610, 54 L.Ed.2d 478 (1977). In the instant case, appellee proposed two reasons for why disclosure was required:

a. it is necessary to the adequate preparation of [defendant's] case to interview all alleged eyewitnesses to the crime, especially when they claim to know the defendant and where the only issue is the identity of the criminals; and,

b. it is necessary to discover the information possessed by the eyewitness and make an in-person evaluation of his credibility, to make an informed decision as to how to cross-examine the victim concerning the basis of his in-court identification, where the basis could have been affected by the victim's knowledge that there existed corroborating information of defendant's identity as a perpetrator.

Motion for Disclosure of Confidential Informant, *reprinted in* Appendix at 18.

■ Appellee's first reason, that as an eyewitness the informant may provide exculpatory information, is clearly not enough. As Judge McLaughlin of this court recognized in *Day*,

In most situations the accused will demand disclosure in the hope that the informer's testimony can substantiate his defense. But if disclosure on a mere supposition is required in every instance the interests of law enforcement in combatting [crime] will be detrimentally affected by the emasculation of its only effective weapon—the informer.

384 F.2d at 469 (McLaughlin, J., concurring). The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*. *United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978); *Prueitt*, 540 F.2d at 1033; *Lannom v. United States*, 381 F.2d 858, 861 (9th Cir. 1967), *cert. denied*, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968).

Appellee argues, however, that the informant is not just an eyewitness to the offense but the *only* available eyewitness. This special status, appellee contends, dem-

---

**3.** *Accord, United States v. Arrington*, 618 F.2d 1119, 1125 (5th Cir. 1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981); *United States v. Alonzo*, 571 F.2d 1384, 1387 (5th Cir.), *cert. denied*, 439 U.S. 847, 99 S.Ct.

147, 58 L.Ed.2d 149 (1978); *McLawhorn v. North Carolina*, 484 F.2d 1, 5 (4th Cir. 1973); *Palmer v. Zahradnick*, 423 F.Supp. 130, 131 (E.D.Va. 1976).

onstrates a particular need for meeting with the informant.

The record in this case does not support appellee's contention. An investigation of the scene of the assault by Postal Inspector Arthur Lee Torrance revealed that there "were 30 or 40 people in the area during the time of the robbery," in addition to the individuals who allegedly committed the offense. Appendix at 104–05. Although none of these possible witnesses were willing to come forward to aid the Government with its case, there has been no showing that if contacted by the defendant, they would not be willing to testify on his behalf. Appellee has not attempted to interview these witnesses nor has he alleged that the Government impeded his ability to do so. Consequently, on this record, it cannot be said that the confidential informant is appellee's only eyewitness and that appellee was entitled to the informant's identity.

In granting appellee's motion for disclosure, the district court concentrated on appellee's second reason for wanting to interview the informant.

[C]ounsel alleges [that] he must be able to evaluate the reliability of the informant in order to determine whether to pursue or forego a specific line of cross examination of government witnesses. If counsel elects to pursue the particular line of questioning the fact that the informant has provided other prejudicial evidence will be disclosed. Defendant's counsel asserts that if he pursues the line of questioning which produces this prejudicial information he must be able to impeach the credibility of the out of court declarant informant. Defendant asserts that he and his counsel can only make an intelligent decision in this regard if [preliminary] access for an interview is granted.

Appendix at 262–63.

While we agree with the district court that this second reason presents a particular need for appellee's counsel to meet with the informant, we, nonetheless, believe that the court erred in ordering disclosure. The second part of the "*Roviaro* test" requires a balancing of the appellee's interest in disclosure against the Government's interest in maintaining the confidentiality of its informant.[4] *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628. If the result of this balance is that disclosure of the informer's identity will be "essential to a fair determination of a cause, the [Government's] privilege must give way." *Id.* at 60, 77 S.Ct. at 627.

In the instant case, the Government has presented a very strong reason for not releasing the identity of the confidential informant. A sealed affidavit to the court sets forth specific facts substantiating the Government's claim that disclosure of the informant's identity may result in danger to the informant. This is not a case in which the Government argues, on general policy bases, that releasing the identity of the informant will deter future witnesses from stepping forward; rather, it is one in which there appears to be a very high risk of physical harm to the particular informant involved. *Compare United States v. Ayala*, 643 F.2d 244, 247 (5th Cir. 1981). While this risk cannot justify a deprivation of appellee's right to a fair trial, it does require close scrutiny of appellee's need to have his counsel meet with the informant. *Id.*

Appellee asserts that he wants his counsel to meet with the informer because there may be a possibility that appellee could impeach the informer's identification of appellee should it be introduced against him at trial. This need does not rise to the level of that asserted by the defendant in *Roviaro*. In both *Roviaro* and *McCray*, the Court specifically articulated those circumstances in *Roviaro* which required the informant's identity to be released: (1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's

4. The Court in *McCray* set forth the important policy grounds underlying the Government's qualified privilege. *See McCray*, 386 U.S. at 308–09, 87 S.Ct. at 1061. In order to ensure the effectiveness of our law enforcement agencies, we must continue to encourage, through the proper use of the Government's privilege, the public to come forward with information.

identity; and (4) the informer was the sole participant other than the accused, in the transaction charged. *McCray*, 386 U.S. at 310–11, 87 S.Ct. at 1062; *Roviaro*, 353 U.S. at 63–65, 77 S.Ct. at 629–30.

In the instant case, the appellee has not shown that the confidential informant is the only witness available to him, and no issue of entrapment has been raised. The informant's testimony, if raised at trial at all, will be relevant to only one issue—what impact, if any, Inspector Ostwalt's remark to Kuzan had on reinforcing the victim's recollection of appellee as one of his assailants. While appellee fears that if his counsel seeks to pursue this question on cross-examination the jury may become aware that there was another witness who placed appellee at the scene of the crime, we cannot jeopardize the life or safety of an informant in order to guarantee the success of appellee's trial tactics. We do not believe that *Roviaro* requires such a result. *See United States v. Winters*, 420 F.2d 523 (3d

Cir. 1970) (per curiam). Accordingly, we will reverse the lower court's order and safeguard the Government's privilege to withhold the identity of its confidential informant.

B. *Constitutionality of Photographic Display*

 The second issue raised in this case is whether the district court erred in suppressing Kuzan's identification of appellee from a display of photographs. The district court found "that the arbitrary disclosure of defendant's juvenile photograph, without first obtaining the court order required by Pennsylvania statute [42 Pa.Cons.Stat.Ann. § 6308 (Purdon 1981)], deprived [appellee] of his due process right to be dealt with only as a child, protected from arbitrary disclosures." Appendix at 260. We will assume for our decision that disclosure of the photograph without a court order violated Pennsylvania law.[5] We nonetheless

5. Section 6308 provides:

(a) General rule.—Law enforcement records and files concerning a child shall be kept separate from the records and files of arrests of adults. Unless a charge of delinquency is transferred for criminal prosecution under section 6355 (relating to transfer to criminal proceedings), the interest of national security requires, or the court otherwise orders in the interest of the child, the records and files shall not be open to public inspection or their contents disclosed to the public except as provided in subsection (b); but inspection of the records and files is permitted by:

(1) The court having the child before it in any proceeding.

(2) Counsel for a party to the proceeding.

(3) The officers or institutions or agencies to whom the child is committed.

(4) Law enforcement officers of other jurisdictions when necessary for the discharge of their official duties.

\* \* \* \* \* \*

(b) Public availability.—

(1) The contents of law enforcement records and files concerning a child shall not be disclosed to the public except if the child is 14 or more years of age at the time of the alleged conduct and if:

(i) the child has been adjudicated delinquent by a court as a result of an act or acts which include the elements of rape, kidnapping, murder, robbery, arson, burglary or other act involving the use of or threat of serious bodily harm:

\* \* \* \* \* \*

(c) Fingerprints and photographs.—

(1) Law enforcement officers shall have the authority to take or cause to be taken the fingerprints or photographs, or both, of any child 15 years of age and older who is alleged to have committed a delinquent act that, but for the application of this chapter, would constitute a felony or a violation of Subchapter a of Chapter 61 of Title 18 (relating to uniform firearms act).

(2) Fingerprint and photographic records shall not be disseminated to law enforcement officers of other jurisdictions, the Pennsylvania State Police or the Federal Bureau of Investigation unless so ordered by the court.

(3) Fingerprints and photographic records of children shall be immediately destroyed by all persons and agencies having these records if the child is not adjudicated delinquent for reason of the alleged acts.

42 Pa.Cons.Stat.Ann. § 6308 (Purdon 1981). This section, as it appears above, became effective on April 29, 1980, after appellee had become an adult but before the photograph taken of him as a juvenile was released. The Government contends that section 6308(c) did not apply to appellee because he was 18 years old when the photograph was released and only section 6308(a)(4) was in existence at the time his juvenile proceedings began. Alternatively, the Government contends that the postal inspectors were involved in a joint investigation with the Philadelphia City police and thus

hold that use of this photograph in a photospread identification did not violate appellee's constitutional rights.

Not all violations of state law rise to the level of constitutional error. *Bishop v. Wood*, 426 U.S. 341, 349 n.13, 96 S.Ct. 2074, 2080, n.13, 48 L.Ed.2d 684 (1976); *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945); *United States v. Scolnick*, 392 F.2d 320, 323 (3d Cir.), *cert. denied sub nom. Brooks v. United States*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). In determining whether the violation of a particular state law deprived a defendant of his due process rights under the fifth amendment, we must ascertain whether the state law directly conferred a substantive right on the defendant or merely created an administrative plan to help the state regulate its officers' conduct. *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1286, 55 L.Ed.2d 783 (1978) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby require a federal constitutional dimension.") *See also Screws*, 325 U.S. at 108, 65 S.Ct. at 1038; *Street v. Surdyka*, 492 F.2d 368, (4th Cir. 1974).

In the instant case, the state created a procedure to protect juveniles from having their juvenile criminal records released to the public. 42 Pa.Cons.Stat.Ann. § 6308. Within that procedure was a special safeguard requiring that a court order be secured before photographs from juvenile records are released to other law enforcement officials. This safeguard, while helpful to the state in ensuring that such records would not be released to the general public, did not create a property interest on behalf

of the appellee. Law enforcement agencies were intended to have access to these records. Accordingly, we hold that appellee has failed to satisfy the first requirement of proving a due process violation; he has not demonstrated that he was deprived of a "property" or "liberty" interest protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).[6] We will therefore reverse the lower court's order suppressing Kuzan's identification of appellee from the display of photographs and appellee's postarrest statement.

The district court erred both in its disclosure order and suppression order. We will reverse and remand for further proceedings consistent with this opinion.

GIBBONS, Circuit Judge, concurring.

I join in the opinion of the court, but write separately to emphasize the narrow scope of the holding on disclosure of the identity of eyewitnesses to a crime. When, as here, eyewitness identification is the crucial element of the government's case against a defendant, effective assistance of counsel obviously requires that all avenues be explored which might produce evidence impeaching the reliability of the eyewitness upon whom the government intends to rely. Leaving the decision as to what eyewitnesses will be made available in the hands of low level government investigative agents would enormously magnify the inherent unreliability of identification testimony. However, there is a legitimate governmental interest in protecting from risk of harm those witnesses whose testimony may contribute little or nothing to an effective defense. Our holding, capsulized in para-

---

could secure the photograph under section 6308(c)(2). *But see* Appendix at 204. Because of our disposition of this case, we need not rule on these issues.

**6.** Appellee also contends that he had a property interest under 18 U.S.C. § 5038 (1976) which required that his juvenile records be withheld. However, this federal provision, like the state law, was drafted to protect appellee from having his records disclosed to the public. Furthermore, this section contains a specific subsection providing, without restriction, for the release of the records to law enforcement officials investigating appellee's crimes. 18 U.S.C. § 5038(a)(3). Accordingly, we hold that appellee also does not have a due process claim under federal statutory law.

graph 20 of the opinion of the court, is that before the informant privilege is set aside a defendant must make a showing that the information he seeks is not readily available from other sources. We have imposed the same requirement with respect to an analogous qualified privilege of media news sources. *United States v. Cuthbertson*, 651 F.2d 189 (3d Cir. 1981). With the foregoing understanding of its holding on the qualified privilege not to disclose the identity of an informant, I join in the opinion of the court.