Asa KING, # 62324, Plaintiff, pro se,

v.

Gary J. HILTON, as an individual and in his official capacity as the Warden at Trenton State Prison, and Robert Balicki, as an individual and in his official capacity as Hearing Officer at Trenton State Prison, Defendants.

Civ. A. No. 81–349.

United States District Court,
D. New Jersey.

Nov. 12, 1981.

Asa King, # 62324, plaintiff, pro se.

Lyle P. Hough, Jr., Deputy Atty. Gen., of N. J., Trenton, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Asa King, an inmate at the New Jersey State Prison at Trenton, brings this action under 42 U.S.C. § 1983 alleging that he was confined in disciplinary detention and Administrative Segregation, as punishment for a disciplinary violation, without the minimal procedures required by the Due Process Clause of the Fourteenth Amendment.[1] Defendants in the suit are Robert Balicki, a disciplinary hearing officer, and Gary J. Hilton, Superintendent of Trenton State Prison. As relief, plaintiff seeks compensatory damages, punitive damages, and the costs of suit.

The matter is now before the Court on defendants' motion for summary judgment. The motion has been considered on the papers, without oral argument, pursuant to Rule 78 of the *Federal Rules of Civil Procedure.*

In order to prevail on a motion for summary judgment, defendants must make an affirmative showing, based upon the pleadings, answers to interrogatories, affidavits and uncontested exhibits on file, that "there is no genuine issue of material fact and that [they] are entitled to judgment as a matter of law". Rule 56, *Federal Rules of Civil Procedure.* Once such a showing has been made, plaintiff "may not rest upon

---

1. Plaintiff alleges violations of both the Fifth and Fourteenth Amendments. Since he brings this action against state officials only, however, his Fifth Amendment claims are not germane.

the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial". *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135 (3d Cir. 1980). In evaluating the evidence the Court must view the facts in the light most favorable to plaintiff. *Adickes v. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir. 1980).

Defendants have submitted comprehensive documentation of the circumstances giving rise to this action, including sworn affidavits by defendant Balicki and Corrections Officer Jimmie L. Williams; records compiled during the disciplinary proceedings; and statements submitted by plaintiff and his representative during the disciplinary proceedings and on appeal to the prison superintendent. Plaintiff has not submitted any evidence countering defendants' version of the facts, despite ample opportunity to do so. I therefore conclude that the following facts are not in dispute.

On the afternoon of July 17, 1980, a Thursday, plaintiff became involved in a fracas in one of Trenton State Prison's mess halls, where he was employed as a food server behind the cafeteria line. The trouble began when a corrections officer supervising the mess hall accused an inmate of entering the serving line for a second helping of food. The inmate reacted violently. Several corrections officers converged upon him and began to wrestle him to the ground. Soon pandemonium broke loose in the mess hall. After order was restored, plaintiff was issued a disciplinary charge for "encouraging others to riot", in violation of Division of Correction and Parole Standard 251.4.252.

At the time he was charged, plaintiff named five witnesses whom he wished to testify in his behalf, and requested the appointment of counsel-substitute to represent him at his disciplinary hearing. He was then placed in pre-hearing detention, pursuant to Divisional Standard 255.271.[2]

On Monday, July 21, 1980, four days later, Disciplinary Hearing Officer Robert Balicki convened a hearing to adjudicate the charges against plaintiff. Plaintiff, through his chosen counsel-substitute, requested at the outset that the charges against him be dismissed on the ground that the hearing had not commenced within three days of his confinement in pre-hearing detention, as required by Divisional Standard 254.270.[3] The request, however, was denied.

Hearing Officer Balicki then read into the record statements by three prison officials which had been compiled in support of the charges by the investigating officer, Sergeant W. Nunn. Among them was a statement by Institutional Training Instructor Frank Grillo that he had witnessed plaintiff throwing food trays at the corrections officers as they grappled on the floor with the offending inmate during the mess hall fracas. (Defts. Exh. 11a.) Plaintiff objected to the statement on the ground that it alleged a disciplinary infraction, assault upon a corrections officer, with which he had not been charged. Hearing Officer Balicki agreed that he would not consider the statement for that purpose.[4]

Hearing Officer Balicki next read into the record statements by three of the five witnesses whose testimony plaintiff had initially requested. He informed plaintiff, however, that the investigating officer had not yet interviewed the remaining two defense witnesses and consequently their testimony was unavailable. Plaintiff request-

---

**2.** Standard 255.271 has since been recodified, without substantial change, as Standard 255.2.

**3.** This Standard, whose text is set out in full, *infra*, has been revised and recodified as Divisional Standards 254.13–14.

**4.** Plaintiff alleges in his complaint that Hearing Officer Balicki agreed not to consider Grillo's statement for any purpose whatsoever. Plaintiff has failed, however, to submit any evidence countering Balicki's sworn statement to the contrary. Balicki's version must therefore be considered as an undisputed fact. Rule 56(e), *Federal Rules of Civil Procedure.*

ed a continuance of the hearing until the missing witness statements could be obtained. Officer Balicki agreed; the hearing was adjourned to the following day and plaintiff was returned to pre-hearing detention.

On Tuesday, July 22, 1980, the hearing was reconvened but the missing witness statements still had not been obtained. Officer Balicki informed plaintiff that, under the circumstances, he would be willing either to proceed to an adjudication of the charges on the evidence then available or to postpone the hearing for an additional period of time. He warned plaintiff, however, that a postponement would entail additional time in pre-hearing detention. Plaintiff objected to a postponement and requested again that the charges against him be dismissed. Balicki denied the request and adjourned the hearing a second time.

The hearing resumed on July 24, 1980, two days later, and all remaining witness statements sought by plaintiff were made part of the record. Hearing Officer Balicki then closed the record, considered the evidence, found plaintiff guilty as charged, and imposed a sanction of 10 days of "lock-up" and referral to the Prison Classification Committee for 90 days of Administrative Segregation. In his adjudication report, Officer Balicki stated that the evidence upon which he relied in finding plaintiff guilty included statements made by both the charging officer and Institutional Training Instructor Grillo. He also gave the following explanation of the sanction imposed:

> Seriousness of offense was considered in the sanction. However since he had to wait several days in P.H.D. [pre-hearing detention] for witness statements he asked for originally I feel he is entitled to a lesser sanction as a result. I feel it is the Prisons [sic] responsibility to get statements from witnesses that are requested by the inmate. Especially in this case where the witness was requested at

the outset of the investigation & was not contacted for a week. 15 days in lockup and 180 days in Ad Seg at the Vroom Readjustment Unit and loss of 180 days commutation time would have been the sanction for this offense. I have reduced it to 10 days lockup and 90 days Ad Seg at TSP [Trenton State Prison] due to holdup in getting statements.

(Defts. Exh. 10a.)

On July 25, 1980 plaintiff appealed the hearing officer's decision to defendant Hilton, Superintendent of Trenton State Prison, pursuant to Divisional Standard 254.-288.[5] (Pltff.'s Exh. D, appended to Complaint.) Defendant Hilton denied the appeal on August 14, 1980. (Pltff.'s Exh. E.) Plaintiff alleges in his complaint that Hilton's three-week delay in deciding his appeal violated "a procedure here at Trenton State to decide all appeals within three days from the date the appeal was submitted". (Complaint, ¶ 20.) He has submitted no evidence, however, in support of this allegation.

On this state of the record plaintiff contends that he was deprived of liberty without due process of law in the following ways: He claims that (1) defendant Balicki, by failing to hold a disciplinary hearing within 72 hours of the time he was first confined in pre-hearing detention, violated Divisional Standard 254.270 and, by failing to follow state-prescribed regulations, denied him due process of law; (2) defendant Balicki arbitrarily "bartered away" his right to a hearing within 72 hours by imposing a lesser sanction instead of dismissing the charges against him; (3) defendant Balicki deprived him of a "full and fair hearing" by utilizing Instructor Grillo's statement in his decision after agreeing not to do so; and (4) defendant Hilton, by failing to render a determination of his appeal within three days, violated a state-prescribed regulation, policy or practice, and thereby denied him due process of law.

5. Standard 254.288 has been revised and recodified as Standard 256. The current standard requires the Superintendent to render a deci-

sion within 72 hours if the petitioner is confined in disciplinary detention. The earlier standard contained no such time limitation.

■ Plaintiff's chief contention is that the prison authorities handling the adjudication of his disciplinary infraction failed to follow rules promulgated by the Division of Correction and Parole mandating a speedy resolution of all prison disciplinary charges, and thereby denied him due process of law. The regulations applicable at the time the charges against plaintiff were filed provided as follows:

> If an inmate is confined in prehearing detention, a hearing shall be held within three days, including weekends and holidays, unless there are exceptional circumstances, unavoidable delays or reasonable postponements. Should the third day fall on a Saturday, Sunday or holiday the last day for a hearing shall be the Monday immediately following the holiday. Whenever inmates are so confined they shall be given priority in scheduling their appearance before the committee or hearing officer. Every effort shall be made to reach a speedy and fair disposition. No delays in hearing a case shall be permitted for the purpose of punishment or discipline.

Divisional Standard 254.270.[6]

Plaintiff does not assert, and clearly on the undisputed factual record before the Court could not assert, any denial of his due process rights independent of the alleged state law violation. The Supreme Court did not address the issue of pre-hearing detention or its permissible duration in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the leading case on the due process rights of prisoners in disciplinary proceedings. The Third Circuit has recently held, however, that the Fourteenth Amendment's due process clause does not, in and of itself, require that prisoners held in pre-hearing detention receive a disciplinary hearing dispositive of their guilt or innocence within a specified time period, but only within a "reasonable time". *Helms v. Hewitt*, 655 F.2d 487, 500 (1981).[7] On the facts before the Court, it can be stated as a matter of law that plaintiff's disciplinary hearing was held within a reasonable time of his confinement in pre-hearing detention. Plaintiff must rest his claim, therefore, entirely upon the alleged violation of the prison's administrative regulations.

Defendants argue that Divisional Standard 254.70, being a merely procedural state regulation, does not give rise to any rights protectable under the due process clause of the Fourteenth Amendment. In the alternative, they argue, plaintiff has failed to show that defendants have in any way violated the standard.

Some courts have held that the failure of state officials to adhere to state-prescribed procedural regulations violates the due process clause of the Fourteenth Amendment, even if those procedures are not independently required as a matter of federal constitutional law. *E. g., Mabey v. Reagan*, 537 F.2d 1036, 1042 (9th Cir. 1976); *Jacobs v. College of William and Mary*, 495 F.Supp. 183, 188 (E.D.Va.1980); *Giampetruzzi v. Malcolm*, 406 F.Supp. 836, 840 (S.D.N.Y. 1975). Other courts, however, have held that merely procedural state regulations may create rights under state law, but do not give rise to interests of a constitutional magnitude. These courts have reasoned that state-created procedures create no justifiable "liberty" or "property" expectations and therefore fail to trigger the operation of the due process clause. *E. g., Bills v. Henderson*, 631 F.2d 1287, 1298-99 (6th Cir.

---

**6.** The Divisional Standards governing the scheduling of hearings were revised and recodified in September, 1980, shortly after the events giving rise to this action. The new regulations contain standards governing the postponement of cases for further investigation (Stds. 254.11–12) and the disposition of cases in which the prescribed time limits have not been followed (Std. 254.14), but otherwise leave the earlier regulations substantially unchanged.

**7.** The procedural requirement of a hearing within a reasonable time presupposes, of course, an underlying substantive entitlement grounded in state or federal law. The Court in *Helms* found the underlying entitlement in prison regulations establishing standards for administrative and disciplinary detention. 655 F.2d at 497.

1980); *Pugliese v. Nelson*, 617 F.2d 916, 924 (2d Cir. 1980); *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979).[8]

The Third Circuit has recently adopted the view that the violation by state officials of merely procedural state regulations does not give rise to a cause of action under the Constitution.[9] Writing for a unanimous panel, Judge Hunter held, in *United States v. Jiles*, 658 F.2d 194, at 200 (3d Cir. 1981), that:

> Not all violations of state law rise to the level of constitutional error. *Bishop v. Wood*, 426 U.S. 341, 349, n. 13, 96 S.Ct. 2074, 2080, n. 13, 48 L.Ed.2d 684 (1975); *Elkins v. U.S.*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945); *United States v. Scolnick*, 392 F.2d 320, 323 (3d Cir.), *cert. denied, Brooks v. U.S.* 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). In determining whether the violation of a particular state law deprived a defendant of his due process rights under the fifth amendment, we must ascertain whether the state law directly conferred a substantive right on the defendant or merely created an administrative plan to help the state regulate its own officers' conduct. *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) ('The simple fact that state law prescribes certain procedures does not mean that the procedures thereby [acquire] a federal constitutional

dimension.') *See also Screws*, 325 U.S. at 108, 65 S.Ct. at 1038; *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974).

In *Jiles*, the district court had suppressed a witness's out-of-court identification of a criminal defendant because it was based upon a photograph which had been obtained from the defendant's juvenile records. State police officials had released the photograph to a federal investigator without first obtaining a court order, as required under Pennsylvania law. On appeal by the Government, the Third Circuit reversed the district court's decision to suppress, holding that the "safeguard [of a court order], while helpful to the state in ensuring that [juvenile] records would not be released to the general public" created neither a "liberty" nor a "property" interest protected by the due process clause. *Id.*, 658 F.2d at 200.[10]

■ While *Jiles* involved the failure by state officials to follow state procedures in the context of a criminal proceeding, and thereby implicates the somewhat specialized jurisprudence of the exclusionary rule, the principles on which the *Jiles* decision rests are equally applicable to civil actions brought pursuant to 42 U.S.C. § 1983. Under *Jiles*, the failure of state officials to adhere to strictly procedural state regulations does not implicate any federally protected "liberty" or "property" interest and thus, whether asserted as a claim or defense, does not constitute a violation of the due process clause.[11]

---

**8.** This view finds strong support in the Supreme Court's recent decision in *United States v. Caceres*, 440 U.S. 741, 751–52, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979). There, the Court held that, while a federal agency must, as a matter of federal law, abide by its own procedural rules and regulations, *e. g., Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963), a federal agency's violation of its own rules does not implicate the Fifth Amendment's due process clause if the rules are not independently required by the Constitution.

**9.** Just a few months earlier, in *Helms v. Hewitt*, (3d Cir. 1981), the Third Circuit identified but did not reach the question "whether a failure of state officials to comply with state procedural

regulations constitutes a deprivation of federal procedural due process". 655 F.2d at 491, n. 5.

**10.** The Third Circuit has long held that evidentiary errors committed by a state court judge in the course of a criminal trial are not ground for overturning a conviction in a habeas corpus proceeding, absent a showing that the errors deprived the defendant of a fundamentally fair trial. *See United States ex rel. Choice v. Brierley*, 460 F.2d 68, 70–71 (3d Cir. 1972). In *Jiles*, the Third Circuit holds that a federal trial judge *commits error* if he suppresses evidence based on a violation of a merely procedural state law.

**11.** The principles established in *Jiles* are equally applicable to actions brought under the Fifth and Fourteenth Amendments, as well.

It is clear, then, that plaintiff states a claim under the due process clause of the Fourteenth Amendment only if the state regulation whose violation he asserts can be characterized as substantive, and not merely procedural, in nature. Defendants assert that Divisional Standard 254.270 is purely procedural and confers no "liberty" or "property" interest upon the prisoner. In fact, however, the standard may more aptly be characterized as Janus-like, with both substantive and procedural aspects. From the point of view of the prison administration, it is true, Standard 254.270 embodies but one of a panoply of procedures governing the entire disciplinary process; it provides an administrative framework for scheduling hearings and ensures that disciplinary matters will be resolved with dispatch. From the point of view of the prisoner, however, the standard creates a substantive expectation that confinement without trial will not, in the absence of several specified circumstances, exceed 72 hours. This is an interest in liberty separate and independent from the prisoner's ultimate interest in avoiding disciplinary sanction. *Cf. Wolff v. McDonnell, supra.*[12]

[redacted] It is well-established in this Circuit that "liberty" interests entitled to protection under the Fourteenth Amendment may be created by administrative regulations. *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980). A state statute or regulation which confers plenary discretion upon the administering official cannot form the "predicate for invoking the protection of the Fourteenth Amendment". *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The mere presence of a discretionary factor in the law, however, will not defeat an individual's claim to a "liberty" interest if the discretion is bounded by reasonably specific standards. *Winsett v. McGinnes, supra*, at 1006.

[redacted] Here, the state's "guarantee" that a prisoner will not be confined in pre-hearing detention for longer than 72 hours without a hearing on his guilt or innocence is certainly subject to a degree of discretion on the part of prison authorities. The specified time limits may be extended if there are "exceptional circumstances, unavoidable delays or reasonable postponements". The exceptions, however, are objectively determinable and narrowly drawn. They do not render the prisoner's expectation of a speedy hearing, and release from confinement if found innocent, illusory. I conclude, therefore, that Divisional Standard 254.270, contrary to defendant's assertion, does create a substantive "liberty" interest entitled to protection under the Fourteenth Amendment. Once such a right has been established, it may not, consistent with due process of law, be "arbitrarily abrogated."[13]

[redacted] Merely to assert that plaintiff has stated a federal cause of action, however, does not resolve the ultimate question whether he is entitled to prevail on the merits of his claim. It is clear, on the undisputed factual record before the Court, that defendant Balicki fully complied with both the letter and spirit of Divisional Standard 254.270. Balicki was entitled, under the rule, to commence plaintiff's disciplinary hearing on the fourth day, a Monday, after plaintiff's confinement in prehearing

12. This case is clearly distinguishable from the recent case of *Gibson v. Lynch*, 652 F.2d 348 (3d Cir. 1981). In *Gibson*, plaintiff, a prisoner, challenged on due process grounds his administrative confinement in "housing hold", under solitary conditions substantially similar to those employed for disciplinary detention. The Third Circuit held that (1) plaintiff had no *federal* substantive right to be free of an intraprison transfer resulting in harsher conditions and (2) plaintiff had no state substantive right either, since no state statute, regulation, practice or policy existed restricting the circumstances under which prisoners could be placed in "housing hold". Here, by contrast, a state law entitlement can be found in the regulations restricting the permissible duration of pre-hearing detention.

13. The focus here is upon substantive due process. The correlative question of the procedures due has already been addressed and answered in *Helms v. Hewitt, supra*. Under *Helms*, procedural due process requires only a subsequent hearing within a reasonable time. As noted above, plaintiff received such a hearing when his disciplinary claim was adjudicated upon the merits.

detention because the third day fell on a Sunday. Balicki was also authorized to effect "reasonable postponements" of adjudicatory hearings. His decision to postpone plaintiff's hearing for three days was obviously intended for plaintiff's benefit and was eminently reasonable. Since plaintiff has failed to show any violation of Standard 254.270, it cannot be said that his substantive rights under the regulation were arbitrarily abrogated. Defendants are therefore entitled to summary judgment on this aspect of plaintiff's complaint.

■ If plaintiff did not have an absolute right to a hearing within 72 hours of his confinement in disciplinary detention, it logically follows that defendant Balicki could not possibly have "bartered away" such a right by imposing a lesser sanction for plaintiff's offense than he would ordinarily have imposed.[14] Plaintiff has no standing to complain of the hearing officer's act of leniency in reducing the sanction imposed which, far from diminishing his freedom, enhanced it by reducing the term of his punishment. Defendants will be awarded summary judgment on this aspect of plaintiff's complaint as well.

■ Plaintiff's third claim is grounded upon his allegation that defendant Balicki utilized the statement of Institutional Instructor Grillo as a basis for his conclusion that plaintiff was guilty of the charges against him when he had explicitly promised not to do so. In a sworn affidavit, however, Balicki denies that he agreed to exclude Grillo's statement from consideration for any purpose; he only agreed, he states, not to consider it as evidence in support of a charge of assault upon an officer. Plaintiff has advanced no evidence contradicting this assertion. Defendants are therefore entitled to summary judgment on this aspect of plaintiff's complaint. *See* Rule 56(e), *Federal Rules of Civil Procedure.*

■ Plaintiff's fourth and final claim is that defendant Hilton, in failing to adhere to a prison policy of deciding disciplinary appeals within three days, denied him due process of law. He has failed, however, to show that such a policy existed at the time his appeal was considered. Divisional Standard 256.6 now provides that: "If an inmate is being held in disciplinary detention which resulted from disciplinary action, the written decision on the appeal shall be given to the inmate within 72 hours of receipt of the appeal, excluding weekends and holidays." This rule did not become effective, however, until September 1, 1980, several weeks after plaintiff's appeal was considered. Plaintiff has introduced no evidence tending to show that, in the absence of a written regulation, the prison had a policy or practice of deciding disciplinary appeals within three days. The factual predicate for plaintiff's claim that defendant Hilton violated prison policies is therefore absent.

■ Even if plaintiff could show that a prison policy existed requiring disciplinary appeals to be adjudicated within three days, it is clear, in light of the Third Circuit's decision in *Jiles, supra,* that the failure by prison authorities to strictly adhere to such a policy would not give rise to a federal cause of action under the due process clause. The Constitution, in and of itself, does not require that prison disciplinary decisions be appealable to the prison administration at all. *Cf. Wolff v. McDonnell, supra.* If the state does provide for such appeals, however, no "liberty" interest is conferred upon the prisoner beyond that which he already enjoys by virtue of the regulations restricting the circumstances under which disciplinary detention can be imposed. The opportunity for appeal merely enlarges the procedures available to the prisoner for challenging the accuracy or propriety of imposing discipline in a given

---

**14.** Balicki's reason for imposing a reduced sanction was that the prison officials investigating plaintiff's alleged infraction had not promptly obtained all requested witness state-

ments. Plaintiff has identified no separate entitlement to such a prompt investigation rising to constitutional magnitude.

situation.[15] Because state regulations permitting appeal of prison disciplinary decisions are purely procedural in nature, their violation does not give rise to a federal cause of action under the Fourteenth Amendment. Defendants are therefore entitled to summary judgment on the fourth and final claim advanced in the complaint.

For the reasons stated in this opinion, I conclude that the facts material to this action are not in dispute and that defendants are entitled to prevail, as a matter of law, on all aspects of the complaint. Defendants, therefore, will be granted summary judgment with respect to the entire action. Defendants' attorney is requested to submit a form of order.

---

15. The right to appeal a disciplinary action to the prison superintendent, which I have found to be purely procedural, differs from the rights an inmate holds under Standard 254.270, which I have found to be partly substantive, in the following respect.

The substantive right protected by the appeals procedure is the prisoner's state-created expectation that he will not be subjected to disciplinary sanctions absent misconduct. *See Wolff v. McDonnell, supra*, 418 U.S. at 557, 94 S.Ct. at 2975. The opportunity to appeal adds nothing of substance to this underlying right; it merely provides an additional means of ensuring that the state-created expectation is not arbitrarily abrogated.

Standard 254.270, by requiring prompt hearings on disciplinary charges, also helps to ensure that a prisoner will not, through the subterfuge of pre-hearing detention, be subjected to *de facto* discipline. It thereby helps to protect prisoners from the arbitrary abrogation of their right not to be disciplined absent misconduct. The standard also, however, creates a new and additional expectation on the prisoner's part that he will not be confined in pre-trial detention status for longer than 72 hours, absent exceptional circumstances, *whether he did or did not* commit the disciplinary offense with which he is charged. Viewed from this perspective, the substantive liberty interest at stake is not that of avoiding disciplinary confinement for any but legitimate offenses, but of avoiding any confinement at all for longer than 72 hours before the question of guilt or innocence is even addressed.