**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3357
_____

UNITED STATES OF AMERICA

v.

JEROME POTTER,
                    Appellant
_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. Action No. 3-11-cr-00016-002)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2014
_____

Before: CHAGARES, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: December 17, 2014)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

---

     * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jerome Potter appeals his conviction and sentence on drug charges. For the reasons that follow, we will affirm.

I

Potter was charged with two counts of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Counts One and Fifty-One), and two counts of use of a communication facility to facilitate a drug crime in violation of 21 U.S.C. § 843(b) (Counts Eighteen and Fifty-Two).

At trial, the jury heard that Potter sold cocaine to Herbert Ferguson on several occasions and that Ferguson then sold the cocaine and cocaine base to James Stephens and others. Following several controlled purchases of cocaine from Ferguson, a confidential informant ("CI 1") told Ferguson that he wanted to buy twenty kilograms of cocaine. Ferguson then called Potter and "asked him if he could help [Ferguson] purchase [it]." App. 231. Potter told Ferguson that each kilogram would cost $12,000 and that he would "see what he could do." App. 231. Potter later assured Ferguson that the cocaine was high quality and that "[e]verything's going to be blessed." App. 232.

CI 1 and another confidential informant, known only as "the Venezuelan," later sought Ferguson's assistance in importing 300 kilograms of cocaine. The confidential informants, Ferguson, and Potter discussed "air drop[ping] 300 kilo[grams] of cocaine on the east end of Coral Bay." App. 197. Together, they drove to Coral Bay in Potter's car, where they identified the location for the air drop and planned for Potter and Ferguson to retrieve the drugs from the water using Potter's boat. Ferguson informed CI 1 that his

2

"boat man," Potter, wanted thirty kilograms of cocaine as compensation. App. 233. The jury was shown a video recording of the meeting and instructed not to consider the statements of the Venezuelan for the truth of the matters asserted.

On the night of the air drop, undercover agents met Potter's boat in Coral Bay and provided a GPS. Potter's boat then traveled to the planned location for the air drop and waited. Law enforcement agents dropped fake drugs into the Bay but at the wrong location. They eventually decided to stop Potter's boat and arrest those on board. When law enforcement agents turned on their lights and sirens, Potter's boat "began to flee the scene at a high rate of speed" before stopping. App. 295. Potter and another individual were arrested on board. Shortly thereafter, Ferguson was arrested on land, where he had been waiting to "help unload the drugs." App. 237.

The jury convicted Potter of all charges against him. With respect to Count One, which focused on drug trafficking other than the air drop, the jury indicated on the verdict sheet that the conspiracy did not involve five kilograms or more of cocaine but did involve at least twenty-eight grams of cocaine base. With respect to Count Fifty-One, the air drop conspiracy, the jury made no finding concerning the quantity of drugs involved. The District Court imposed concurrent sentences of 292, 240, and forty-eight months' imprisonment for Count One, Count Fifty-One, and Counts Eighteen and Fifty-Two, respectively, as well as terms of supervised release. Potter appeals.

## II[1]

### A

Potter contends that reversal is warranted because of outrageous government conduct through its initiation of the criminal activity underlying his convictions. "[C]laims of outrageous government conduct . . . must be made in a pretrial motion, unless the evidence supporting these claims [was] not known to the defendant prior to trial." United States v. Salahuddin, 765 F.3d 329, 350 (3d Cir. 2014). Because Potter was aware of the evidence forming the basis of his claim and has provided no explanation for his failure to raise this defense before trial, the claim is waived. Id.

### B

Potter also claims that there was insufficient evidence to support his conspiracy convictions.[2] To prove a conspiracy of the sort alleged here, the Government must show "(1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) (en banc).[3] It may satisfy this burden through the use of direct or

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] Potter does not challenge the sufficiency of the evidence with respect to his convictions under 21 U.S.C. § 843(b).

[3] We exercise plenary review over an appeal from the grant or denial of a judgment of acquittal, reviewing the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (quotation marks, alterations, and internal citations omitted).

4

circumstantial evidence, so long as any circumstantial inferences drawn from the evidence "bear a logical or convincing connection to established fact." Id. (internal quotation marks and citation omitted). "The [G]overnment need not prove that each defendant knew all of the conspiracy's details, goals, or other participants." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999). It must, however, "proffer sufficient evidence from which a jury could have concluded that each drug transaction in which [the defendant] was involved was a step in achieving the conspiracy's common goal of distributing [drugs] for profit." Id. (internal quotation marks and citation omitted).

With respect to Count One, the jury's verdict was supported by sufficient evidence. The jury heard testimony that Potter sold cocaine to Ferguson who then distributed it in powder and crack form to others. Moreover, when approached by Ferguson about the twenty kilogram deal, Potter confirmed the price, told Ferguson he would "see what he could do," and then confirmed the quality and packaging of the cocaine. App. 231. Drawing all inferences in favor of the Government, we conclude that there was ample evidence to support the jury's verdict that Potter joined the conspiracy to possess with intent to distribute controlled substances.

The jury's verdict with respect to Count Fifty-One was also supported by sufficient evidence. The evidence showed that Potter met with Ferguson and the two informants to discuss a plan to drop 300 kilograms of cocaine into Coral Bay by plane, retrieve it using Potter's boat, and distribute it to others. On the night of the air drop, Potter obtained a GPS device so he could find the agreed-upon location for the air drop

and thereafter waited on the water. Furthermore, when law enforcement agents turned on their lights and sirens to arrest him, Potter fled, reflecting his consciousness of wrongdoing. Thus, there is sufficient evidence demonstrating that Potter knowingly joined this conspiracy to possess with intent to distribute cocaine.

C

Potter next contends that his Sixth Amendment right to confront the witnesses against him was violated when the District Court: (1) limited his ability to cross-examine Ferguson;[4] and (2) admitted recorded statements by the Venezuelan. The Confrontation Clause does not provide an "unfettered right[] to cross-examine witnesses." United States v. Friedman, 658 F.3d 342, 356 (3d Cir. 2011). Instead, the "district court retains wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." United States v. John-Baptiste, 747 F.3d 186, 211 (3d Cir. 2014) (quotation marks, alterations, and internal citations omitted). Here, the District Court prevented Potter from inquiring about the specific sentence Ferguson would have faced absent his cooperation but permitted Potter to ask whether Ferguson had faced a "substantial" sentence. App. 265-66. As Ferguson and Potter faced similar charges, and questions about the specific sentence Ferguson faced might therefore have influenced the jury's deliberations with improper

---

[4] We review a district court's decision to limit the scope of cross-examination for abuse of discretion. United States v. Friedman, 658 F.3d 342, 352 (3d Cir. 2011).

considerations about the sentence Potter faced, there was no abuse of discretion in limiting the inquiry.  John-Baptiste, 747 F.3d at 212 ("The District Court limited inquiry only into specific sentences that could have been imposed if the witnesses had refused to cooperate—a line of questioning that we have allowed trial courts to curtail." (emphasis in original)).[5]

Potter's rights were also not violated by the use of the conversations with the Venezuelan.  The "Confrontation Clause is not implicated when statements are offered 'for purposes other than establishing the truth of the matter asserted.'"  Michigan v. Bryant, 131 S. Ct. 1143, 1161 n.11 (2011) (quoting Crawford v. Washington, 541 U.S. 36, 60 n.9 (2004)).  Because the jury was told that the Venezuelan's statements were offered for the limited purpose of "put[ing] the statements of the other parties to the conversations into perspective and mak[ing] them intelligible to the jury and recognizable as admissions," and not for their truth,[6] it was not an abuse of discretion to admit them, and their admission did not violate the Confrontation Clause.  United States v. Hendricks, 395 F.3d 173, 184 (3d Cir. 2005) (quotation marks and internal citations omitted).[7]

---

[5] Potter thoroughly cross-examined Ferguson, including about the benefits his family secured as part of his plea agreement.

[6] Moreover, Potter was afforded the opportunity to cross-examine Ferguson about the accuracy of the conversation.

[7] To the extent Potter also claims he was hampered by not knowing the name of the Venezuelan, he has failed to meet his burden "to show the need for disclosure." United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981).  Although the Venezuelan "helped to set up the commission of the crime and . . . was present at its occurrence," there is "no fixed rule" that mandates disclosure.  Roviaro v. United States, 353 U.S. 53, 61-62 (1957).  Instead, we look to the "particular circumstances of each case, [including]

7

D

Potter also contends that the admission of photographs of drugs found in Ferguson's home violated Fed. R. Evid. 403. Because Potter did not object, we review for plain error.[8] Here, there was no error. A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, we cannot say that the prejudice flowing from the admission of the photographs substantially outweighed their probative value, as the drugs found in Ferguson's home were probative of the chain of distribution from Potter to Ferguson and tended to make the existence of the conspiracy more probable.[9] Thus, there was no error under Rule 403 in admitting this evidence.

---

the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62. Here, the District Court did not abuse its discretion by not requiring the Government to disclose the identity of the Venezuelan, particularly as there were recordings and multiple witnesses who testified about the events in question and Potter has not explained how the evidence of his identity would be "relevant and helpful to his defense." United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002) (quotation marks, alterations, and internal citations omitted).

[8] Under the plain error standard, we will reverse only if (1) there was error; (2) the error was clear or obvious; (3) it affected the defendant's substantial rights; and (4) it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013) (quotation marks and internal citations omitted).

[9] We also find no abuse of discretion concerning the fake cocaine bales as the evidence was not admitted at trial. Furthermore, even if the jury saw this evidence, any prejudice was cured by the District Court's instruction to "entirely disregard" any

Potter's assertion that his sentence violates <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), is also without merit. In <u>Alleyne</u>, the Supreme Court held that "'any fact that increases the mandatory minimum sentence is an "element" that must be submitted to the jury' and proved beyond a reasonable doubt." <u>United States v. Winkelman</u>, 746 F.3d 134, 135 (3d Cir. 2014) (quoting <u>Alleyne</u>, 133 S.Ct. at 2155) (internal alteration omitted). Therefore, where a fact, such as drug quantity, "trigger[s] a statutory mandatory minimum sentence[, it] must . . . be submitted to a jury." <u>United States v. Smith</u>, 751 F.3d 107, 117 (3d Cir. 2014). If, however, no statutory mandatory minimum sentence is triggered, then the absence of a jury's fact finding is irrelevant.

Here, the jury made a specific finding concerning the quantity of drugs involved in the conspiracy charged in Count One that supported the imposition of a sentence with a mandatory minimum of five years. As to Count Fifty-One, which pertained to the air drop, the jury made no finding concerning the drug quantity and the District Court correctly imposed a sentence on the Count without a mandatory minimum. Thus, Potter's sentences comport with <u>Alleyne</u>.

F

Potter also contends that the District Court erred in applying a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(3) because there was insufficient

---

proposed exhibit not admitted into evidence. App. 361; <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).

evidence that Potter, rather than his passenger, "acted as a . . . navigator" of the boat.[10] U.S.S.G. § 2D1.1(b)(3). We disagree. At the time of the air drop, Potter and one other individual were at the intended drop site on Potter's boat, and Ferguson referred to Potter as his "boat man." App. 233. Because a preponderance of the evidence showed that Potter navigated his boat on the night of the air drop, the District Court did not abuse its discretion in applying the enhancement. United States v. Miller, 527 F.3d 54, 60 n.5 (3d Cir. 2008).

III

For the foregoing reasons, we will affirm.

---

[10] We review a district court's application of a sentencing enhancement for abuse of discretion. United States v. Fumo, 655 F.3d 288, 314 (3d Cir. 2011).